**Ralph Melvin JOHNSON, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 16658.**

United States Court of Appeals
Eighth Circuit.

June 7, 1961.

William M. Howard, St. Louis, Mo., filed brief and made oral argument for appellant.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., made argument; D. Jeff Lance, U. S. Atty., St. Louis, Mo., on the brief for the Government.

Before GARDNER, VOGEL and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Defendant Johnson was by indictment charged with the crime of falsely making and counterfeiting $10.00 Federal Reserve Notes with intent to defraud in violation of 18 U.S.C.A. § 471, on or about July 20, 1959. Defendant pleaded not guilty, was tried by a jury, and was convicted and sentenced to a prison term of four years. This timely appeal followed.

Defendant admitted counterfeiting the currency, but defended upon the basis that he lacked the specific intent to defraud required by the statute for the reason that he committed the offense under duress and coercion.

Defendant does not challenge the sufficiency of the evidence to sustain the conviction; hence, a detailed statement of the evidence is not essential.

The jury by its verdict rejected defendant's coercion theory. Barr, Bennett, Lindquist and Koines all participated in the counterfeiting activity here involved and all were convicted for their part therein. Defendant contends that he was originally tricked into contacting the above-named counterfeiters on the pretense that he was to print checks for them and that thereafter he was coerced into printing the counterfeit currency by the display of a gun by Bennett on several occasions. No words were spoken to implement the threat. The counterfeiting ran over a period of several days, during which period the defendant was left alone for substantial intervals. Defendant when first interviewed by the investigating officials denied any participation in the counterfeiting.

Defendant was a skilled printer and a lithographer and offered testimony that he deliberately did a poor job of counterfeiting. He testified that he had no previous acquaintance with any of the counterfeiters except Barr and that his previous relations with Barr had been in connection with legitimate printing business.

Defendant admitted that he had been offered money for supplying counterfeit bills but states that such offers were refused. Lindquist and Koines as rebuttal witnesses for the Government stated that Bennett had paid the defendant $200 to $250 during the course of the counterfeit operations on the night of July 20.

Defendant urges that he is entitled to a reversal for the following reasons:

"I.

"The Court erred in refusing to grant Appellant's motion for a continuance filed during the trial.

"II.

"The trial court erred in overruling Appellant's motion for new trial based on proof of false testimony given at the trial.

"III.

"The trial Court erred in refusing to charge the jury as requested by Defendant's Instructions concerning the presumption or inference raised by failure to call certain witnesses.

"IV.

"The trial Court erred in instructing the jury on credibility of witnesses by failing to include Appellant's Instruction No. 15 which permitted the jury to consider the effect of impeachment by prior inconsistent statements upon credibility of a witness.

"V.

"The trial Court erred in charging the jury that Appellant had the burden of proving his innocence."

We shall consider the asserted errors in the order stated.

## I.

The defendant asserts that the court abused its discretion in denying his motion filed on August 3 during the course of the trial asking for continuance until August 5 to afford defendant an opportunity to produce Stutsman as a witness to impeach Lindquist's testimony. Lindquist at the trial testified that he saw Bennett pay money to defendant. The affidavit supporting the motion for continuance states that Stutsman would testify that when he was present at the jail with Mr. Howard, defendant's counsel, Lindquist in an interview had stated that he had no knowledge as to whether the defendant received money from any persons engaged in the counterfeiting.

The affidavit states that Stutsman is in Texas and that he is expected back on or about August 5.

The trial had been postponed at least once and defendant had adequate notice of the trial date and made no objection to proceeding to trial. Defendant's counsel had doubtless taken Stutsman to the jail conference for a purpose and should have been aware of the possibility that Stutsman's testimony might be desired at the trial. Precaution should have been taken to see that Stutsman was subpoenaed as a witness.

Moreover, Stutsman's information was identical with that of Mr. Howard, the defendant's attorney. The court suspended its rules and permitted Mr. Howard to testify without engaging other counsel to examine him. The court also by questioning Howard brought out that Stutsman, who is an attorney, also heard Lindquist's statement at the jail and was unavailable as a witness because of his being out of town.

The trial was completed on August 3 and the verdict was returned on the same day. The continuance would have created at least two days delay in the trial.

The granting of motions for continuance before or during trial is discretionary with the trial court. In the absence of a clear abuse of discretion, the action of the trial court will be sustained. Bunn v. United States, 8 Cir., 260 F.2d 313, 316; Kansas City Star Co. v. United States, 8 Cir., 240 F.2d 643, 651; McKenna v. United States, 8 Cir., 232 F.2d 431, 435.

In the Bunn case we stated, "This Court will not retroactively attempt to substitute its discretion for that of a trial judge as to matters which have to do with the orderly conduct of a trial before him and which concern not only the defendant and the Government, but witnesses, jurors, and the court itself." [260 F.2d 316.]

The court did not abuse its discretion in overruling the motion for continuance.

## II.

Defendant next asserts that the court erred in denying his motion for a new trial based upon his contention that Mrs. Barr gave false testimony, prejudicial to the defendant at the trial. Defendant testified that he had no previous acquaintance with Bennett. At the trial Mrs. Barr testified defendant and Bennett were present at her husband's shop at the same time on one prior occasion. After the trial, Mrs. Barr had admitted that she had had a number of visits with defendant since the trial, at some of which her testimony was discussed. Attached to the motion for a new trial was Mrs. Barr's affidavit that her testimony at the trial that defendant and Bennett had previously met was erroneous.

Mrs. Barr's testimony was taken in support of the motion. The court, before ruling, procured a transcript of Mrs. Barr's testimony at the trial. In a memorandum opinion the court states, in part:

> "From the testimony before the Court on both occasions, and from the Court's opportunity to see and observe the witness Mrs. Barr, I am not reasonably well satisfied that her testimony at the trial was false nor that without it the jury might have reached a different conclusion. In fact, to the contrary, I am reasonably well satisfied that her testimony on the trial was true and correct, that her recantation was doubtful, confused, the possible result of suggestion by the defendant and not worthy of belief.

> "Further, there was sufficient testimony in the record to satisfy the Court (and evidently the jury) that defendant was not threatened, intimidated, coerced or forced to participate in the offense charged and the result of the trial would have been the same with or without Mrs. Barr's testimony."

▮ Courts look upon recantation with suspicion. The trial court, which has had the witness before it, is in a much better position to determine where the truth lies than an appellate court. An appellate court should not interfere with the trial court's findings which have evidentiary support. Motions for new trial based upon factual considerations should not be tried de novo upon appeal. United States v. Johnson, 327 U.S. 106, 111–113, 66 S.Ct. 464, 90 L.Ed. 562; Connelly v. United States, 8 Cir., 271 F.2d 333; United States v. Smith, 7 Cir., 253 F.2d 95, 98; Newman v. United States, 5 Cir., 238 F.2d 861, 863; Jencks v. United States, 5 Cir., 226 F.2d 553, 555.

▮ No useful purpose will be served in setting out the evidence on the recantation issue in detail. A careful examination of the record convinces us that a firm basis exists for the trial court's conclusion that the falsity of Mrs. Barr's evidence at the trial was not established. The court committed no error in denying the motion for new trial.

## III.

Barr and Bennett, who had been previously convicted for their part in the counterfeiting, were at the time of the trial serving sentences in a federal prison. Neither of said persons was called as a witness by either party. Defendant requested the court to instruct in substance that if the Government had a person under its exclusive control who had not been called as a witness, and that person if called could give material testimony on the issues presented, the jury may presume (infer in an alternate requested instruction) that because of the Government's failure to call such witnesses, the testimony that would have been given by such person would be adverse to the Government.

Defendant contends that the court's refusal to give such instruction was error.

It is doubtless true that Bennett in particular could have given material testimony on the coercion issue. It is equally clear that the part Bennett and Barr played at counterfeiting activity

was at least as well known to the defendant as to the Government. While Bennett and Barr were in custody of the Government serving their sentences, there is no evidence to indicate that the Government had any control over the nature of the testimony they might give. We cannot say upon this record whether the proposed witnesses were friendly to the Government or to those who participated with them in the counterfeiting, or whether they could be depended upon to tell the truth.

■ It is well-established that where a witness is equally available to both parties, no presumption flows from the failure of a party to call such witness. Wagner v. United States, 9 Cir., 264 F.2d 524, 531; Beale v. United States, 5 Cir., 263 F.2d 215; Zammar v. United States, 8 Cir., 217 F.2d 223, 226; Murray v. United States, 8 Cir., 117 F.2d 40, 45.

In the Beale case, the witness defendant claimed the Government should have produced was in jail. The court affirmed the trial court's denial of an instruction similar to that requested in the present case, stating that the person was equally available as a witness for either side.

In the Murray case, the proposed witness was in the penitentiary.

■ In our present case, either party could have applied to the court for a writ of habeas corpus ad testificandum. Neither party applied for such writ as to either Barr or Bennett, although the Goverment did obtain such a writ as to Lindquist and Koines. It would appear that Barr and Bennett were equally available to both parties. Under such circumstances, as much reason exists for a presumption arising from defendant's failure to call them as from the Government's failure to do so.

The court committed no error in refusing the requested instruction.

### IV.

Defendant complains that the court erred in refusing his requested instruction upon impeachment for prior inconsistent statements of a witness.

■ We have examined the court's instructions as a whole and believe that they adequately set out standards to be applied by the jury in determining the credibility of witnesses. The court set out a number of factors to be considered in determining credibility, winding up with the statement that the jury might consider "any other fact or circumstance which you consider important in weighing such witnesses' testimony."

Defendant has not demonstrated that the court committed any prejudicial error in refusing to give the requested instruction.

### V.

Lastly, defendant contends that the court erred in charging the jury at the close of its coercion instruction as follows:

"[I]f you find and believe from the evidence that the defendant did not act willingly or voluntarily, but he acted because of coercion or compulsion induced by fear of immediate and impending danger of serious bodily harm, either to himself or to a near relative, and that there was no reasonable opportunity to escape the compulsion without doing what he did, then you should acquit him."[1]

■ Defendant now contends that the court by this instruction placed the burden of proof upon the defendant, to prove coercion. It is the law, and no one contends otherwise, that the burden of proof rests upon the Government to prove the defendant's guilt beyond a reasonable doubt and there is no burden upon the defendant to prove his defense of coercion. The Government's position is that the instruction does not

---

[1]. The coercion instruction here given, particularly the part quoted, substantially follows suggested form of criminal instruction No. 52 proposed by Honorable Wm. C. Mathes, United States District Judge for the Southern District of California, set out at 20 F.R.D. 231, 276.

place any burden upon the defendant and that in any event the propriety of the instruction is not open for review, because appropriate exception was not taken to the instruction. Defendant objected to the coercion instruction solely upon the basis that it misstated the law on what constituted coercion. Our examination of the record satisfies us that the defendant in his exception to the instruction did not make the claim he now makes, that the burden of proof upon the coercion issue was placed upon him. The defendant is not asserting here the exceptions he urged to the coercion instruction in the trial court.

Defendant calls attention to the fact that his requested coercion instruction, which the court rejected and which did not adequately state the law on coercion, provided that if a reasonable doubt existed that the defendant acted because of coercion, he should be acquitted. The requested instruction dealt primarily with what constitutes coercion. The burden of proof issue was not fairly called to the attention of the trial court by the requested instruction.

■ In Armstrong v. United States, 8 Cir., 228 F.2d 764, 768, we said, "A party objecting to a failure of the trial court to give instructions requested must state specifically to what he objects and why."

■ Rule 30, Federal Rules of Criminal Procedure, 18 U.S.C.A., provides in part:

> "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

The purpose of the quoted portion of the rule is to give the trial judge a fair opportunity to correct any mistakes in his charge. An exception which does not fulfill this purpose does not entitle the party to a review of the instruction. Northcraft v. United States, 8 Cir., 271 F.2d 184, 189–190; Marbs v. United States, 8 Cir., 250 F.2d 514, 517; Armstrong v. United States, 8 Cir., 228 F.2d 764, 768.

■ The burden of proof objection now asserted was not presented in the manner required by Rule 30. If the defendant had properly raised the objection it is very probable that the court out of an abundance of caution would have again repeated the reasonable doubt standard.

■ Defendant claims we should note plain error under Rule 52(b) of the Federal Rules of Criminal Procedure. We have repeatedly held that the plain error rule should be applied with caution and should be invoked only to avoid a miscarriage of justice. Page v. United States, 8 Cir., 282 F.2d 807, 810.

■ We have held that criticism of instructions raised for the first time upon appeal will not be considered unless "the instructions were so completely erroneous as to result in a miscarriage of justice." Kampmeyer v. United States, 8 Cir., 227 F.2d 313, 322; Armstrong v. United States, supra.

■ We find no basis here for invoking the plain error rule. The court instructed the jury that the instructions should be considered and applied as a whole, not piecemeal. The court early in its instructions stated, "The defendant is presumed to be innocent and that presumption continues with him throughout the trial until such time as you become satisfied from the evidence of his guilt and it makes no difference from which side the evidence comes, but you must be so satisfied beyond a reasonable doubt."

The court in its burden of proof instruction again told the jury that the burden was upon the Government to prove the defendant's guilt and that the Government assumes such burden in the beginning and carries it thoughout the trial, "until it has been met by showing to you the guilt of the defendant beyond a reasonable doubt", and again at a later point repeated the reasonable doubt instruction.

 Instructions should be considered as a whole, not piecemeal, or in isolation. It has frequently been held that a court need not include the burden of proof requirement in its instructions at all points. Marks v. United States, 10 Cir., 260 F.2d 377, 381; Orton v. United States, 4 Cir., 221 F.2d 632; Eierman v. United States, 10 Cir., 46 F.2d 46, 47; Burgner v. United States, 4 Cir., 272 F. 116.

In the Burgner case, which involves the coercion issue, the court states:

"It will thus be seen that the contention under review rests entirely on the fact that the instruction as to reasonable doubt was not repeated after or in immediate connection with the quoted charge on the subject of coercion, although no exception was taken to that charge and no request made for further instructions. The proposition is clearly untenable. The jury had already been told that they must be satisfied of defendant's guilt beyond reasonable doubt, and they could not have failed to understand that this instruction applied as well to what was afterwards said in regard to coercion." 272 F. 117.

In the Orton case, the court in rejecting a contention that error was committed in not repeating the reasonable doubt provision in a supplemental instruction, stated:

"Jurors should be given credit for having ordinary intelligence; and if there is one doctrine of the criminal law which they probably understand better than any other it is the presumption of innocence and the burden resting upon the prosecution to establish guilt beyond a reasonable doubt." 221 F.2d 635–636.

In our present case, had the defendant acted under legal coercion in doing the counterfeiting, he could not have the criminal intent necessary to support his conviction. The burden was on the Government to establish criminal intent beyond a reasonable doubt.

The court in the instruction complained of did not specifically place any burden of proof upon the defendant but told the jury that if the defendant was coerced the jury should acquit. A careful examination of the instructions as a whole convinces us that the jury was in no way misled by any failure on the part of the court to repeat the reasonable doubt instruction with relation to the coercion issue. The instructions as a whole clearly placed the burden upon the Government to establish every element of the crime charged beyond a reasonable doubt.

A thorough study of the record in this case convinces us that the defendant had a fair trial and that the defendant has not demonstrated that the court has committed any prejudicial error.

The judgment is affirmed.