**UNITED STATES of America, Plaintiff,**

v.

**Francisco
DOMINGUEZ–MESTAS, Defendant.**

**Crim. No. 87–0492–R.**

United States District Court,
S.D. California.

May 24, 1988.

Patrick K. O'Toole, Asst. U.S. Atty., San Diego, Cal., for plaintiff.

Cynthia Aaron, Aaron & Cortez, San Diego, Cal., for defendant.

## MEMORANDUM OPINION AND ORDER

RHOADES, District Judge.

The defendant, Francisco Dominguez–Mestas is charged with importation of heroin into the United States, in violation of 21 U.S.C. Sections 952, 960 and 963; possession of heroin with intent to distribute, in violation of 21 U.S.C. Section 841(a)(1); and making false statements to federal officers, in violation of 18 U.S.C. Section 1001. In prior proceedings, this court's determination that the defendant's offer of proof was insufficient to establish the defense of duress, was reversed in an unpublished opinion. *See, U.S. v. Dominguez–Mestas*, 830 F.2d 197 (9th Cir.1987). Presently, the government moves to require the defendant to have the burden of proving his duress by a preponderance of the evidence.

### I. FACTS

On May 10, 1986, the defendant, on foot, entered the United States at the Calexico, California border crossing. After being referred to the secondary baggage inspection area, the defendant made a negative declaration concerning Mexican purchases and stated that the purpose of his visit to Mexico was to visit his mother. The border inspector noticed that the defendant became increasingly nervous; his hands were trembling and he avoided direct eye contact. The defendant was then referred to two private rooms where pat-down searches revealed two packages of heroin concealed in the waistband of his pants. The two packages, together, constituted approximately 173 grams of heroin. The defendant has raised duress as a defense. His proffer follows.

The defendant is a resident alien living in El Monte, California. In early 1986 the defendant borrowed approximately $2,000.00 from an unidentified man, referred to in defense counsel's briefs and

oral arguments as the "lender". The money was needed to finance medical care for his ill mother living in Magdalena, Jalisco, Mexico. His mother died on March 6, 1986 and the defendant returned to El Monte, California, the debt unpaid. The defendant claims he was repeatedly contacted by an agent of the lender regarding repayment of the debt. The agent suggested that the defendant could carry drugs from Mexico into the United States to satisfy his obligation to the lender. The defendant rejected this suggestion.

Sometime after this initial contact, the defendant received a telephone call from his sister, Maria, who lived in Magdalena, Mexico. According to the defendant's proffer, his sister told him a man came to her house and threatened to kill her and the defendant unless he repaid the debt. For a period of one and one half to two months, the lender's agent continued to suggest to the defendant that he smuggle drugs to pay off his debt. The defendant asserts he continued to decline. However, on May 10, 1986, the defendant drove to Mexicali, Mexico, to meet with the lender. On the basis of threats made that day by the lender and the lender's agent, the defendant claims he was forced to transport the heroin across the border to prevent immediate harm to his sister in Magdalena. Acknowledging the lender's presence in Mexicali, the defendant claims he was concerned the lender would contact someone in Magdalena to carry out the threat of harm to his sister. The defendant also expressed concerns about the corruption of the Mexican police to explicate his failure to tell the authorities of his predicament.

## II. DISCUSSION

The government's position is that this court should place the burden of persuasion on the defendant to prove his affirmative defense of duress, and the government should not be required to prove the absence of duress beyond a reasonable doubt.

█ There is no question that Ninth Circuit cases have stated that once a criminal defendant satisfies his burden of production with respect to an affirmative defense such as duress, the burden of proof will shift to the prosecution to prove the absence of duress beyond a reasonable doubt. *See, e.g., U.S. v. Gonsalves,* 675 F.2d 1050, 1053–1054 (9th Cir.1982), *cert. denied,* 459 U.S. 837, 103 S.Ct. 83, 74 L.Ed. 78 (1982); *U.S. v. Guess,* 629 F.2d 573, 577 n. 4 (9th Cir.1980); *See also, Manual of Model Jury Instructions for the Ninth Circuit,* Section 6.04, p. 94 (1985). Cited as authority for this procedural practice is *U.S. v. Hearst,* 563 F.2d 1331, 1336, n. 2 (9th Cir. 1977), *cert. denied,* 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed. 90 (1978). *See, e.g., Walker v. Endell,* 828 F.2d 1378, 1381 n. 1 (9th Cir.1987)

█ In *Hearst,* the defendant raised the duress defense, "contending her co-participants compelled her to engage in criminal activity." *Hearst,* 563 F.2d at 1335. The Per Curiam decision affirmed the trial court's admission of "other acts" evidence, proffered to rebut Hearst's duress defense by showing she willingly engaged in armed activity with her co-participants at another time. The language regarding the burden of proof in a duress defense appearing on page 1336, footnote 2, of the *Hearst* opinion was enunciated by way of illustration and analogy and was not essential to the decision. Accordingly, the statement is dictum, lacking the force of an adjudication. Additionally, subsequent Ninth Circuit cases have cited *Hearst* in a context not central to the issue resolved by the court. *See, e.g., U.S. v. Gonsalves,* 675 F.2d 1050, 1054 (9th Cir.1982) (discussing the statute of limitations as an affirmative defense); *U.S. v. Winn,* 577 F.2d 86, 89 (9th Cir.1978) (citing *Hearst* for the proposition that "[o]nce *insanity* is raised as a defense, the Government must bear the burden of proving sanity beyond a reasonable doubt.") (emphasis added); *U.S. v. Glickman,* 604 F.2d 625, 634 (9th Cir.1979), *cert. denied,* 555 U.S. 1080, 100 S.Ct. 1032, 62 L.Ed. 2d 764 (1980) (citing *Hearst* for the proposition that "[i]t is not incumbent on the prosecution to prove *sanity* until the defense presents evidence to the contrary.") (emphasis added); *U.S. v. Guess,* 629 F.2d at

577, n. 4 (9th Cir.1980).[1] Therefore, the burden of persuasion in a duress defense is premised on dictum in *U.S. v. Hearst, supra,* and repeated as dicta in subsequent decisions. The fact that cases decided after *Hearst* have cited the case as authority for placing the burden of proving an absence of duress on the government does not transform the dictum into law. As Justice Oliver Wendell Holmes wrote in 1912:

> The dictum in that case gains no new force from the repetition by text writers. It is one of misfortunes of the law that ideas become encysted in phrases and thereafter for a long time cease to provoke further analysis.

*Hyde v. U.S.,* 225 U.S. 347, 391, 32 S.Ct. 793, 811, 56 L.Ed.2d 1114 (1912).

■ An even more persuasive reason to depart from *Hearst* is that the dictum erroneously equates the prosecution's burden of proving the absence of duress with its burden of proving any essential element of the crime charged. *Hearst,* 563 F.2d at 1336, n. 2. "The rule of duress provides that a prohibited act is not a crime if the actor reasonably believed it to be necessary to save himself or herself, [or a family member][2] from imminent death or great bodily injury." Perkins, *Impelled Perpetration Revisited,* 33 Hastings L.J. 403, 419 (1981).[3] Authority exists that one act-ing under coercion or duress does not possess the criminal intent necessary to support a conviction. *See, e.g., U.S. v. Johnson,* 516 F.2d 209, 212–213 (8th Cir.1975), *cert. denied,* 423 U.S. 859, 96 S.Ct. 112, 46 L.Ed. 85 (1975); *U.S. v. Johnson,* 291 F.2d 150, 157 (8th Cir.1961), *cert. denied,* 368 U.S. 880, 82 S.Ct. 130, 7 L.Ed 2d 80 (1961); *People v. Condley,* 69 Cal.App.3d 999, 1011–1012, 138 Cal.Rptr. 515, 521–522, *cert. denied,* 434 U.S. 988, 98 S.Ct. 619, 54 L.Ed. 2d 483 (1977); *People v. Luther,* 394 Mich. 619, 232 N.W.2d 184 (1975); *See generally, U.S. v. Mitchell,* 725 F.2d 832, 835 (2d Cir.1983). However, the better reasoned view is that "duress does not preclude an intent to commit the crime, but rather is only a justification for conduct that otherwise would be criminal." *Walker,* 828 F.2d, at 1381. Accordingly, duress does not preclude a finding of willful or voluntary action. *See, Mitchell,* 725 F.2d at 835, n. 4; G. Williams, *Criminal Law,* Section 240 at 751 (2d Ed.1961). Instead, even though the defendant has committed a criminal act and possesses the mental state which the crime requires, "his conduct which violates the literal language of the criminal law is justified because he has thereby avoided a harm of greater magnitude." W. La Fave & A. Scott, *Substantive Criminal Law,* Section 5.3, p. 615.[4]

---

**1.** In *Guess, Hearst* is cited for the general rule that once a criminal defendant satisfies his burden of production with respect to an affirmative defense such as duress, the prosecution must prove its inapplicability beyond a reasonable doubt. However, the facts presented in *Guess* did *not* require the court to decide whether this general rule applied "not only to affirmative defenses that negate culpability, but also those which ... are apparently designed merely to establish the scope of a regulatory scheme." *Guess,* 629 F.2d at 577, n. 4.

**2.** *See,* Perkins, *Impelled Perpetration Revisited,* 33 Hastings L.J. 403, 411 (1981). ("There is also some authority for the proposition that the acts may be excused if the harm threatened is directed not at the actor, but at members of the actor's family".)

**3.** The elements of a duress defense are: (1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) no reasonable opportunity to escape the threatened harm. *U.S.*

*v. Contento–Pachon,* 723 F.2d 691, 693 (9th Cir. 1984).

**4.** "If duress negatived state of mind there would be no rule that intentional killings cannot be excused by duress ... for the threat of harm would negative the defendant's capacity to intend death and so constitute a defense to murder of the intent-to-kill sort." W. La Fave & A. Scott, *Substantive Criminal Law,* Section 5.3, p. 615, n. 4 (1986); *See, e.g.,* Cal. Penal Code Section 26 (West Supp.1988) (excusing as criminally incapable "persons (*unless the crime be punishable with death* ) who committed the act or made the omission charged under threats or menaces sufficient to show that they had reasonable cause to and did believe their lives would be endangered if they refused ...") (emphasis added); *But see,* Conn.Gen.Stat. Section 53a–14 (1979); N.Y. Penal Law Section 40.00 (McKinney 1975) (duress can be a defense to any crime.)

Therefore, duress does not negate mens rea, whether the crime charged be a general or specific intent crime. *U.S. v. Calfon,* 607 F.2d 29, 30 (2d Cir.1979) ("Although the offense of distributing a controlled substance requires specific intent, 21 U.S.C. Section 841(a), absence of duress is not thereby made an element of the crime.") (citing *M'Growther's Case,* 168 Eng.Rep. 9 (1746); W. La Fave & A. Scott, *Handbook on Criminal Law,* 374 (1972)); *See, Mitchell,* 725 F.2d at 835–836. In both instances "the defendant forms an intention to commit a crime and chooses to act upon that intention." *Mitchell,* 725 F.2d at 835, (citing G. Williams, *Criminal Law,* Section 240 at 751 (2d Ed.1961); 2 J. Stephen, *History of Criminal Law,* 101–104 (1883)).

■ "[T]he Due Process clause of the U.S. Constitution protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *U.S. v. Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). In the instant case, the prosecution must prove beyond a reasonable doubt the elements of the crimes charged. *Jackson v. Virginia,* 443 U.S. 307, 315–316, 99 S.Ct. 2781, 2786-787, 61 L.Ed.2d 560 (1979): (1)(a) that the defendant intentionally brought or attempted to bring a controlled substance, heroin, into the United States, (b) knowing the substance was heroin or another controlled substance. 21 U.S.C. Sections 952, 960, 963; (2)(a) that the defendant knowingly possessed a controlled substance (b) with the intent to distribute it, 21 U.S.C. Section 841(a)(1); and (3)(a) that the defendant made a statement within the jurisdiction of the U.S. Customs Service, (b) the statement was untrue, (c) the defendant knew the statement was untrue, (d) the defendant either knew or should have known that the statement was made in a matter within the jurisdiction of the U.S. Customs Service and (e) that the statement was material to the U.S. Customs Service's activities. 18 U.S.C. Section 1001. Because duress does not negate the intent required for each charge just listed, the absence of duress is not an element the prosecution must prove beyond a reason-

able doubt. *U.S. v. Calfon,* 607 F.2d at 30 (2d Cir.1979), *cert denied,* 444 U.S. 1085, 100 S.Ct. 1044, 621 L.Ed.2d 771 (1980); *Cf. U.S. v. Falcon,* 766 F.2d 1469, 1477 (10th Cir.1985) (Absence of coercion held not to be an additional element of each crime charged. The court held it was not error "to give an instruction on coercion separately from the elements of the crime as long as the instruction makes clear ... that the burden rests upon the government to disprove coercion beyond a reasonable doubt.")

Moreover, placing the burden of proving an affirmative defense on the defendant does not offend accepted notions of justice or violate the Due Process Clause. *Martin v. Ohio,* 480 U.S. 228, 107 S.Ct. 1098, 1103, 94 L.Ed.2d 267 (1987) (self-defense); *Leland v. Oregon,* 343 U.S. 790, 799, 72 S.Ct. 1002, 1007–08, 96 L.Ed.2d 1302 (1952) (insanity); *Walker v. Endell,* 828 F.2d at 1381 (9th Cir.1987) (duress); *See also, U.S. v. Patterson,* 432 U.S. 197, 210, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281 (1977) ("Proof of the nonexistence of all affirmative defenses has never been Constitutionally required....").

Recognizing that the procedural practice espoused in *Hearst,* and subsequent cases citing *Hearst,* is dicta, and that the Constitution does not prohibit shifting the burden of persuasion as well as production to the defendant to prove his duress by a preponderance of the evidence, the instant motion presented by the government is granted. The defendant must prove his duress by a preponderance of the evidence; the government is not required to prove the absence of duress beyond a reasonable doubt.

In making this decision, this court is aware of contrary authority in other jurisdictions holding that after a defendant has introduced evidence on all elements of the duress defense the prosecution must rebut the issues of coercion beyond a reasonable doubt. *See, e.g., U.S. v. Falcon,* 766 F.2d at 1477 (10th Cir.1985); *U.S. v. Mitchell,* 725 F.2d at 836 (2d Cir.1979); *U.S. v. Campbell,* 675 F.2d 815, 821 (6th Cir.1982), *cert. denied, Fultz v. U.S.,* 459 U.S. 850, 103 S.Ct. 112, 74 L.Ed. 2d 99 (1982); *U.S.*

v. Campbell, 609 F.2d 922, 925 (8th Cir. 1979), cert. denied, 445 U.S. 918, 100 S.Ct. 1282, 63 L.Ed.2d 604 (1980); U.S. v. Calfon, 607 F.2d at 30 (2d Cir.1979). Cited as authority for placing the burden of proving the absence of duress on the government are U.S. v. Johnson, 516 F.2d 209 (8th Cir.1975) cert. denied, 423 U.S. 859, 96 S.Ct. 112, 46 L.Ed.2d 85 (1975); Johnson v. U.S., 291 F.2d 150 (8th Cir.1961), cert. denied, 368 U.S. 880, 82 S.Ct. 130, 7 L.Ed.2d 80 (1961); and U.S. v. Hearst, supra. As has already been noted, the statement in Hearst regarding the burden of proof on duress is dictum. Moreover, the Hearst decision makes the erroneous assumption that the absence of duress is equivalent to an element of the crime. Hearst, supra, at 1336 n. 2. Similarly, in both Johnson, 516 F.2d at 155–157, and Johnson, 291 F.2d at 155–157, neither of the defendants objected to a jury instruction allocating the burden of proof on a defense of duress. "[I]n both cases the courts viewed the charge as assigning the prosecutor a burden of proof beyond a reasonable doubt, deeming the prosecutor's burden to prove willfulness to encompass a burden to disprove duress." Mitchell, 725 F.2d at 834, n. 2. (emphasis added). All three cases erroneously assume that duress prevents the mens rea required for criminal culpability, and their authority is therefore questionable.

Perhaps the most formidable obstacle to this court's ruling is the logic expressed in U.S. v. Mitchell, 725 F.2d at 835–836. Mitchell discussed the degree of required proof allocated to the government to disprove a defendant's duress. The court in Mitchell was concerned with the "grave possibility of juror confusion if a jury is instructed, on the one hand, that the prosecution must prove all elements of crime, including willfulness, beyond a reasonable doubt, and, on the other hand, that the prosecution need only disprove duress by a preponderance of the evidence." Mitchell, 725 F.2d at 836. This concern was rejected by the Supreme Court in Martin v. Ohio, 107 S.Ct. at 1102 note * *, (instructions placing the burden of proving self-defense by a preponderance of the evidence on a

defendant charged with aggravated murder were "sufficiently clear to convey to the jury that the state's burden of proving prior calculation did not shift and that self-defense evidence had to be considered in determining whether the state's burden had been discharged.") Id.

In Mitchell the court saw "no reason peculiar to the duress defense warranting departure from the general federal practice that once a criminal defendant satisfies an initial burden of producing sufficient evidence to warrant submission of a substantive defense to the jury, the prosecution must disprove at least an element of the defense beyond a reasonable doubt." Mitchell, 725 F.2d at 836. Notwithstanding Mitchell, this court, presiding over a multitude of cases involving illegal importation of controlled substances from Mexico into the United States, arrives at the opposite conclusion: Several reasons, "peculiar" to the duress defense, warrant a departure from the general federal practice placing the burden of disproving duress, once raised, on the prosecution.

An "explicit justification for shifting the burden of persuasion to the defendant is often to ease the prosecutor's difficulty in disproving facts peculiarly perceived within the defendant's knowledge." Jeffries & Stephan, Defenses, Presumptions and Burden of Proof in the Criminal Law, 88 Yale L.J. 1325, 1335 (1979). In the instant case the events surrounding this "immediate" threat of harm giving rise to the defendant's duress defense all occurred in Mexico. Witnesses to conversations between the defendant, the lender and the lender's agent on May 10, 1986, are in Mexico; witnesses to previous visit(s) to the defendant's sister in Magdalena are in Mexico and any evidence is in Mexico. As Mexico is a foreign country and beyond the government's subpoena power, the government has no access to any witnesses or evidence to disprove the defendant's duress. Requiring the government in such a situation to prove a negative, i.e., the absence of duress beyond a reasonable doubt, is an almost impossible burden. Accordingly, it appears to be more practical and equitable to have the defendant prove his duress by a preponderance of the evidence.

The practical problem of the unavailability of witnesses and evidence to the prosecution is magnified by the recent increase in drug traffic from Mexico into the United States. Reports provided by the El Paso Intelligence Center regarding seizures of marijuana and cocaine along the Mexican/American border for the calendar years 1982 through 1987 reflect a drastic increase in the amount of marijuana and cocaine seized by the U.S. Customs Service from drug traffickers.[5]

The requirement of proving a defendant's guilt beyond a reasonable doubt is "bottomed on a fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free." *Winship*, 397 U.S. at 372, 90 S.Ct. at 1077. (Harlan, J., concurring)

The social cost of placing the burden on the prosecution to prove guilt beyond a reasonable doubt is thus an increased risk that the guilty will go free. While it is clear that our society has willingly chosen to bear a substantial burden in order to protect the innocent, it is equally clear that the risk it must bear is not without limits; and Mr. Justice Harlan's aphorism provides little guidance for determining what those limits are.

*Patterson*, 432 U.S. at 208, 97 S.Ct. at 2326.

The social cost of drug abuse in our country is undeniably devastating. Due Process does not require the prosecution to prove an absence of duress. *Walker v. Endell*, 828 F.2d, at 1381. Consequently, this court feels compelled to adopt the common law rule placing the burden of proving an affirmative defense on the defendant for the reasons just expressed, "peculiar" to a duress defense.

At common law the burden of proving one's affirmative defenses was on the defendant. *Martin v. Ohio*, 480 U.S. ——, 107 S.Ct. at 1103; *Patterson v. New York*,

432 U.S. at 202, 97 S.Ct. at 2322–23 (citing 4 W. Blackstone, Commentaries* 201; M. Foster, Crown Law, 225 (1762)). "[T]his was the rule when the Fifth Amendment was adopted, and it was the American rule when the Fourteenth Amendment was ratified." *Patterson*, 432 U.S. at 202, 97 S.Ct. at 2323 (citing *Commonwealth v. York*, 50 Mass. 93 (1845)). In 1895 the Supreme Court abandoned this common law view with respect to insanity in federal prosecutions. *Davis v. U.S.*, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895). Subsequent to *Davis*, "the prosecution in a majority of jurisdictions in this country sooner or later came to shoulder the burden of proving the sanity of the accused and of disproving the facts constituting other affirmative defenses ..." *Patterson*, 432 U.S. at 202–203, 97 S.Ct. at 2323. While language in the *Davis* opinion appears to establish a constitutional doctrine, in placing the burden of proving sanity on the government, subsequent Supreme Court cases repudiated such an interpretation. *Leland v. Oregon*, 343 U.S. 790, 798, 72 S.Ct. 1002, 1007, 96 L.Ed. 1302 (1952); *Patterson v. New York*, 432 U.S. at 203, 97 S.Ct. at 2323 ("*Davis* was not a constitutional ruling, however, as *Leland v. Oregon* made clear.") *Davis* was characterized as establishing a federal procedural rule regarding the burden of proof when insanity is raised as an affirmative defense, a rule which has since been repudiated by Congress. *See,* 18 U.S.C. Section 17(b). ("The defendant has the burden of proving the defense of insanity by clear and convincing evidence.")

The "procedural" rule from *Davis* was also premised on the assumption that sanity was one of the facts necessary to constitute the crime charged. *Davis*, 160 U.S. at 482, 16 S.Ct. at 356. As has been noted already in this Order, the absence of duress is not an element of any of the crimes with which the defendant is charged in the instant case. Indeed, to require the govern-

---

**5.** The government has submitted an affidavit of a special agent with the U.S. Customs Service listing the amounts of marijuana and cocaine seized from 1982 through 1987 as follows:

(a) In 1982, 26,789 kilograms of marijuana and 57.4 kilograms of cocaine.

(b) In 1983, 27,665 kilograms of marijuana and 137.3 kilograms of cocaine.

(c) In 1984, 87,473 kilograms of marijuana and 248.6 kilograms of cocaine.

(d) In 1985, 78,265 kilograms of marijuana and 1,141 kilograms of cocaine.

(e) In 1986, 66,613 kilograms of marijuana and 2,288 kilograms of cocaine.

(f) In 1987, 146,311 kilograms of marijuana and 10,279 kilograms of cocaine.

ment to disprove duress beyond a reasonable doubt would be tantamount to creating another element of each crime, a usurpation of an exclusively legislative function. *See, e.g., In re Sealed Case,* 838 F.2d 476, 488 (D.C.Cir.1988).

## III. CONCLUSION

Duress does not negate criminal intent. A defendant acting under duress intends to commit a crime but his conduct is excused because he has avoided a greater harm. Due Process does not require the prosecution prove the absence of duress. The general federal practice of placing the burden of persuasion on the government once the defendant has satisfied his burden of production regarding an affirmative defense arose from *Davis,* a case which has since been repudiated by statute and reinterpreted by the Supreme Court. *See, Leland v. Oregon, supra.* Recognizing that, upon close scrutiny, the Ninth Circuit cases discussing the burden of proof once duress is raised are dicta, this court can, in good faith, place upon the defendant the burden of proving his duress defense, by a preponderance of the evidence.

IT IS SO ORDERED.