Justice Stevens
delivered the opinion of the Court.
In January 2003, petitioner Keshia Dixon purchased multiple firearms at two gun shows, during the course of which she provided an incorrect address and falsely stated that she was not under indictment for a felony. As a result of these illegal acts, petitioner was indicted and convicted on one count of receiving a firearm while under indictment in violation of 18 U. S. C. § 922(n) and eight counts of making false statements in connection with the acquisition of a firearm in violation of § 922(a)(6). At trial, petitioner admitted that *4 she knew she was under indictment when she made the purchases and that she knew doing so was a crime; her defense was that she acted under duress because her boyfriend threatened to kill her or hurt her daughters if she did not buy the guns for him.
Petitioner contends that the trial judge’s instructions to the jury erroneously required her to prove duress by a preponderance of the evidence instead of requiring the Government to prove beyond a reasonable doubt that she did not act under duress. The Court of Appeals rejected petitioner’s contention, 413 F. 3d 520 (CA5 2005); given contrary treatment of the issue by other federal courts,[1] we granted certiorari, 546 U. S. 1135 (2006).
I
At trial, in her request for jury instructions on her defense of duress, petitioner contended that she “should have the burden of production, and then that the Government should be required to disprove beyond a reasonable doubt the duress.” App. 300. Petitioner admitted that this request was contrary to Fifth Circuit precedent, and the trial court, correctly finding itself bound by Circuit precedent, denied petitioner’s request. Ibid. Instead, the judge’s instructions to the jury defined the elements of the duress defense[2] and *5 stated that petitioner has “the burden of proof to establish the defense of duress by a preponderance of the evidence.” Id., at 312.
Petitioner argues here, as she did in the District Court and the Court of Appeals, that federal law requires the Government to bear the burden of disproving her defense beyond a reasonable doubt and that the trial court’s erroneous instruction on this point entitles her to a new trial. There are two aspects to petitioner’s argument in support of her proposed instruction that merit separate discussion. First, petitioner contends that her defense “controverted the mens rea required for conviction” and therefore that the Due Process Clause requires the Government to retain the burden of persuasion on that element. Brief for Petitioner 41. Second, petitioner argues that the Fifth Circuit’s rule is “contrary to modern common law.” Id., at 14.
II
The crimes for which petitioner was convicted require that she have acted “knowingly,” § 922(a)(6), or “willfully,” § 924(a)(1)(D).[3] As we have explained, “unless the text of the statute dictates a different result, the term ‘knowingly’ merely requires proof of knowledge of the facts that constitute the offense.” Bryan v. United States, 524 U. S. 184, 193 (1998) (footnote omitted). And the term “willfully” in § 924(a)(1)(D) requires a defendant to have “acted with knowledge that his conduct was unlawful.” Ibid. In this case, then, the Government bore the burden of proving beyond a reasonable doubt that petitioner knew she was mak *6 ing false statements in connection with the acquisition of firearms and that she knew she was breaking the law when she acquired a firearm while under indictment. See In re Winship, 397 U. S. 358, 364 (1970). Although the Government may have proved these elements in other ways, it clearly met its burden when petitioner testified that she knowingly committed certain acts—she put a false address on the forms she completed to purchase the firearms, falsely claimed that she was the actual buyer of the firearms, and falsely stated that she was not under indictment at the time of the purchase—and when she testified that she knew she was breaking the law when, as an individual under indictment at the time, she purchased a firearm. App. 221-222.
Petitioner contends, however, that she cannot have formed the necessary mens rea for these crimes because she did not freely choose to commit the acts in question. But even if we assume that petitioner’s will was overborne by the threats made against her and her daughters, she still knew that she was making false statements and knew that she was breaking the law by buying a firearm. The duress defense, like the defense of necessity that we considered in United States v. Bailey, 444 U. S. 394, 409-410 (1980), may excuse conduct that would otherwise be punishable, but the existence of duress normally does not controvert any of the elements of the offense itself.[4] As we explained in Bailey, “[c]riminal liability is normally based upon the concurrence of two factors, 'an evil-meaning mind [and] and evil-doing hand____’ ” Id., at 402 (quoting Morissette v. United States, *7 342 U. S. 246, 251 (1952)). Like the defense of necessity, the defense of duress does not negate a defendant’s criminal state of mind when the applicable offense requires a defendant to have acted knowingly or willfully; instead, it allows the defendant to “avoid liability . . . because coercive conditions or necessity negates a conclusion of guilt even though the necessary mens rea was present.” Bailey, 444 U. S., at 402.[5]
The fact that petitioner’s crimes are statutory offenses that have no counterpart in the common law also supports our conclusion that her duress defense in no way disproves an element of those crimes. We have observed that “[t]he definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute.” Liparota v. United States, 471 U. S. 419, 424 (1985). Here, consistent with the movement away from the traditional dichotomy of general versus specific intent and toward a more specifically defined hierarchy of culpable mental states, see Bailey, 444 U. S., at 403-404, Congress defined the crimes at issue to punish defendants who act “knowingly,” § 922(a)(6), or “willfully,” § 924(a)(1)(D). It is these specific mental states, rather than some vague “evil mind,” Brief for Petitioner 42, or “ ‘criminal’ intent,” Martin v. Ohio, 480 U. S. 228, 235 (1987), that the Government is required to prove beyond a reasonable doubt, see Patterson v. New York, 432 U. S. 197, 211, n. 12 (1977) (“The applicability of the reasonable-doubt standard, *8 however, has always been dependent on how a State defines the offense that is charged in any given case”). The jury instructions in this case were consistent with this requirement and, as such, did not run afoul of the Due Process Clause when they placed the burden on petitioner to establish the existence of duress by a preponderance of the evidence.
Ill
Having found no constitutional basis for placing upon the Government the burden of disproving petitioner’s duress de-. fense beyond a reasonable doubt, we next address petitioner’s argument that the modern common law requires the Government to bear that burden. In making this argument, petitioner recognizes that, until the end of the 19th century, common-law courts generally adhered to the rule that “the proponent of an issue bears the burden of persuasion on the factual premises for applying the rule.” Fletcher, Two Kinds of Legal Rules: A Comparative Study of Burden-of-Persuasion Practices in Criminal Cases, 77 Yale L. J. 880, 898 (1967-1968). In petitioner’s view, however, two important developments have established a contrary common-law rule that now prevails in federal courts: this Court’s decision in Davis v. United States, 160 U. S. 469 (1895), which placed the burden on the Government to prove a defendant’s sanity, and the publication of the Model Penal Code in 1962.
Although undisputed in this case, it bears repeating that, at common law, the burden of proving “affirmative defenses—indeed, ‘all... circumstances of justification, excuse or alleviation’—rested on the defendant.” Patterson, 432 U. S., at 202 (quoting 4 W. Blackstone, Commentaries *201); see also Martin v. Ohio, 480 U. S., at 235; Mullaney v. Wilbur, 421 U. S. 684, 693 (1975). This common-law rule accords with the general evidentiary rule that “the burdens of producing evidence and of persuasion with regard to any given issue are both generally allocated to the same party.” 2 J. Strong, McCormick on Evidence §337, p. 415 (5th ed. *9 1999). And, in the context of the defense of duress, it accords with the doctrine that “where the facts with regard to an issue lie peculiarly in the knowledge of a party, that party has the burden of proving the issue.” Id., at 418. Although she claims that the common-law rule placing the burden on a defendant to prove the existence of duress “was the product of flawed reasoning,” petitioner accepts that this was the general rule, at least until this Court’s decision in Davis. Brief for Petitioner 18. According to petitioner, however, Davis initiated a revolution that overthrew the old common-law rule and established her proposed rule in its place.
Davis itself, however, does not support petitioner’s position. In that case, we reviewed a defendant’s conviction for having committed murder “feloniously, wilfully, and of his malice aforethought.” 160 U. S., at 474. It was undisputed that the prosecution’s evidence, “if alone considered, made it the duty of the jury to return a verdict of guilty of the crime charged”; the defendant, however, adduced evidence at trial tending to show that he did not have the mental capacity to form the requisite intent. Id., at 475. At issue before the Court was the correctness of the trial judge’s instruction to the jury that the law “ ‘presumes every man is sane, and the burden of showing it is not true is upon the party who asserts it.’” Id., at 476. Under this instruction, “if the evidence was in equilibrio as to the accused being sane, that is, capable of comprehending the nature and effect of his acts, he was to be treated just as he would be if there were no defence of insanity or if there were an entire absence of proof that he was insane.” Id., at 479.
In reversing the defendant’s conviction, we found ourselves “unable to assent to the doctrine that in a prosecution for murder... it is the duty of the jury to convict where the evidence is equally balanced on the issue as to the sanity of the accused at the time of the killing.” Id., at 484 (emphasis added). Instead, we concluded that this defendant was “entitled to an acquittal of the specific crime charged if upon *10 all the evidence there is reasonable doubt whether he was capable in law of committing [the] crime.” Ibid, (emphasis added). Our opinion focused on the “definition of murder,” explaining that “it is of the very essence of that heinous crime that it be committed by a person of ‘sound memory and discretion,’ and with ‘malice aforethought.’” Ibid. Reviewing “the adjudged cases” and “elementary treatises upon criminal law,” we found that “[a]ll admit that the crime of murder necessarily involves the possession by the accused of such mental capacity as will render him criminally responsible for his acts.” Id., at 485. Thus, when we ultimately found that the burden of proving the accused’s sanity rested on the Government, our holding rested on the conclusion that
“[Davis’] guilt cannot be said to have been proved beyond a reasonable doubt—his will and his acts cannot be held to have joined in perpetrating the murder charged—if the jury, upon all the evidence, have a reasonable doubt whether he was legally capable of committing crime, or (which is the same thing) whether he wilfully, deliberately, unlawfully, and of malice aforethought took the life of the deceased. As the crime of murder involves sufficient capacity to distinguish between right and wrong, the legal interpretation of every verdict of guilty as charged is that the jury believed from all the evidence beyond a reasonable doubt that the accused was guilty, and was therefore responsible, criminally, for his acts. How then upon principle or consistently with humanity can a verdict of guilty be properly returned, if the jury entertain a reasonable doubt as to the existence of a fact which is essential to guilt, namely, the capacity in law of the accused to commit that crime?” Id., at 488.
Our opinion in Davis, then, interpreted a defendant’s sanity to controvert the necessary mens rea for the crime of *11 murder committed “feloniously, wilfully, and of his malice aforethought,” id., at 474, as “[o]ne who takes human life cannot be said to be actuated by malice aforethought, or to have deliberately intended to take life, or to have ‘a wicked, depraved, and malignant heart/ . . . unless at the time he had sufficient mind to comprehend the criminality or the right and wrong of such an act,” id., at 485. We required the Government to prove the defendant’s sanity beyond a reasonable doubt because the evidence that tended to prove insanity also tended to disprove an essential element of the offense charged. See Davis v. United States, 165 U. S. 373, 378 (1897) (“[T]he fact of sanity, as any other essential fact in the case, must be established to the satisfaction of the jury beyond a reasonable doubt” (emphasis added)). Whether or not this reasoning correctly treated insanity as negating the mens rea for murder as defined in the statute at issue, cf. n. 4, supra, it does not help petitioner: The evidence of duress she adduced at trial does not contradict or tend to disprove any element of the statutory offenses that she committed.
Nor does the proposition for which Davis has come to stand help petitioner’s cause. Although written more narrowly in the context of a prosecution for the crime of murder, Davis was later interpreted to establish a general “rule for federal prosecutions . . . that an accused is ‘entitled to an acquittal of the specific crime charged if upon all the evidence there is reasonable doubt whether he was capable in law of committing crime.’ ” Leland v. Oregon, 343 U. S. 790, 797 (1952) (quoting Davis, 160 U. S., at 484); see also Lynch v. Overholser, 369 U. S. 705, 713 (1962) (explaining that the Davis rule applied in all federal courts). After Davis, if a federal defendant introduced sufficient evidence to raise a reasonable doubt as to his sanity, it was sufficient to create a question for the jury on which the Government bore the ultimate burden of persuasion beyond a reasonable doubt. *12 See, e. g., Hall v. United States, 295 F. 2d 26, 28 (CA4 1961); Holloway v. United States, 148 F. 2d 665, 666 (CADC 1945); Post v. United States, 135 F. 1, 10 (CA5 1905).
In apparent recognition of the fact that Davis relied on the heightened mens rea applicable to the particular statute at issue, we held in Leland that this rule was not constitutionally mandated, 343 U. S., at 797, and Congress overruled it by statute in 1984, requiring a defendant to prove his insanity by clear and convincing evidence, 98 Stat. 2057, codified at 18 U. S. C. § 17(b). Moreover, Congress has treated the defense of insanity differently from that of duress not only by codifying it but by requiring defendants who intend to rely on an insanity defense to provide advance notice to the Government. See Fed. Rule Crim. Proc. 12.2(a). Thus, even if the rule arising from Davis may have once been relevant to an evaluation of other affirmative defenses, Congress’ differential treatment of the insanity defense and its rejection of the Davis rule are inconsistent with petitioner’s invitation to follow Davis’ lead in this case.
Indeed, petitioner’s reliance on Davis ignores the fact that federal crimes “are solely creatures of statute,” Liparota, 471 U. S., at 424, and therefore that we are required to effectuate the duress defense as Congress “may have contemplated” it in the context of these specific offenses, United States v. Oakland Cannabis Buyers’ Cooperative, 532 U. S. 483, 491, n. 3 (2001) (internal quotation marks omitted); see also id., at 499 (Stevens, J., concurring in judgment) (explaining that Court was addressing whether the statute at issue foreclosed a necessity defense to specific charges brought under the statute); Bailey, 444 U. S., at 410 (“We need not speculate now, however, on the precise contours of whatever defenses of duress or necessity are available against charges brought under [18 U. S. C.J § 751(a)”). The offenses at issue in this case were created by statute in 1968, when Congress enacted the Omnibus Crime Control and Safe Streets Act (hereinafter Safe Streets Act or Act). See 82 *13 Stat. 197. There is no evidence in the Act’s structure or history that Congress actually considered the question of how the duress defense should work in this context, and there is no suggestion that the offenses at issue are incompatible with a defense of duress.[6] Cf. Oakland Cannabis Buyers’ Cooperative, 532 U. S., at 491. Assuming that a defense of duress is available to the statutory crimes at issue,[7] then, we must determine what that defense would look like as Congress “may have contemplated” it.
As discussed above, the common law long required the defendant to bear the burden of proving the existence of duress. Similarly, even where Congress has enacted an affirmative defense in the proviso of a statute, the “settled rule in this jurisdiction [is] that an indictment or other pleading . . . need not negative the matter of an exception made by a proviso or other distinct clause . . . and that it is incumbent on one who relies on such an exception to set it up and establish it.” McKelvey v. United States, 260 U. S. 353, 357 (1922); see also United States v. Dickson, 15 Pet. 141, 165 (1841) (calling this “the general rule of law which has always prevailed, and become consecrated almost as a maxim in the interpretation of statutes”). Even though the Safe Streets Act does not mention the defense of duress, we can safely assume that the 1968 Congress was familiar with *14 both the long-established common-law rule[8] and the rule applied in McKelvey and that it would have expected federal courts to apply a similar approach to any affirmative defense that might be asserted as a justification or excuse for violating the new law.[9]
This conclusion is surely more reasonable than petitioner’s hypothesis that Davis dramatically upset a well-settled rule of law. Petitioner cites only one federal case decided before 1968 for the proposition that it has been well established in federal law that the Government bears the burden of disproving duress beyond a reasonable doubt. But that case involved a defendant’s claim that he “lacked the specific intent to defraud required by the statute for the reason that he committed the offense under duress and coercion.” Johnson v. United States, 291 F. 2d 150, 152 (CA8 1961). Thus, when the Court of Appeals explained that “there is no burden upon the defendant to prove his defense of coercion,” id., at 155, that statement is best understood in context as a corollary to the by-then-unremarkable proposition that “the burden of proof rests upon the Government to prove the defendant’s guilt beyond a reasonable doubt,” ibid. Properly understood, Johnson provides petitioner little help in her uphill struggle to prove that a dramatic shift in the federal common-law rule occurred between Davis and the enactment of the Safe Streets Act in 1968.
Indeed, for us to be able to accept petitioner’s proposition, we would need to find an overwhelming consensus among *15 federal courts that it is the Government’s burden to disprove the existence of duress beyond a reasonable doubt. The existence today of disagreement among the Federal Courts of Appeals on this issue, however—the very disagreement that caused us to grant certiorari in this case, see n. 1, supra— demonstrates that no such consensus has ever existed. See also post, at 25-27 (Breyer, J., dissenting) (discussing differences in treatment of the duress defense by the various Courts of Appeals). Also undermining petitioner’s argument is the fact that, in 1970, the National Commission on Reform of Federal Criminal Laws proposed that a defendant prove the existence of duress by a preponderance of the evidence. See 1 Working Papers 278. Moreover, while there seem to be few, if any, post-Davis, pre-1968 cases placing the burden on a defendant to prove the existence of duress,[10] or even discussing the issue in any way, this lack of evidence does not help petitioner. The long-established common-law rule is that the burden of proving duress rests on the defendant. Petitioner hypothesizes that Davis fomented a revolution upsetting this rule. If this were true, one would expect to find cases discussing the matter. But no such cases exist.
It is for a similar reason that we give no weight to the publication of the Model Penal Code in 1962. As petitioner notes, the Code would place the burden on the government to disprove the existence of duress beyond a reasonable doubt. See ALI, Model Penal Code § 1.12, p. 88 (2001) (hereinafter Model Penal Code or Code) (stating that each element *16 of an offense must be proved beyond a reasonable doubt); § 1.13(9)(c), at 91 (defining as an element anything that negatives an excuse for the conduct at issue); §2.09, at 131-132 (establishing affirmative defense of duress). Petitioner argues that the Code reflects “well established” federal law as it existed at the time. Brief for Petitioner 25. But, as discussed above, no such consensus existed when Congress passed the Safe Streets Act in 1968. And even if we assume Congress’ familiarity with the Code and the rule it would establish, there is no evidence that Congress endorsed the Code’s views or incorporated them into the Safe Streets Act.
In fact, the Act itself provides evidence to the contrary. Despite the Code’s careful delineation of mental states, see Model Penal Code §2.02, at 94-95, the Safe Streets Act attached no explicit mens rea requirement to the crime of receiving a firearm while under indictment, § 924(a), 82 Stat. 233 (“Whoever violates any provision of this chapter ... shall be fined not more than $5,000 or imprisoned not more than five years, or both”). And when Congress amended the Act to impose a mens rea requirement, it punished people who “willfully” violate the statute, see § 104(a), 100 Stat. 456, a mental state that has not been embraced by the Code, see Model Penal Code '§ 2.02(2), at 94-95 (defining “purposely,” “knowingly,” “recklessly,” and “negligently”); id., Explanatory Note, at 97 (“Though the term ‘wilfully’ is not used in the definitions of crimes contained in the Code, its currency and its existence in offenses outside the criminal code suggest the desirability of clarification”). Had Congress intended to adopt the Code’s structure when it enacted or amended the Safe Streets Act, one would expect the Act’s form and language to adhere much more closely to that used by the Code. It does not, and, for that reason, we cannot rely on the Model Penal Code to provide evidence as to how Congress would have wanted us to effectuate the duress defense in this context.
*17 IV
Congress can, if it chooses, enact a duress defense that places the burden on the Government to disprove duress beyond a reasonable doubt. In light of Congress’ silence on the issue, however, it is up to the federal courts to effectuate the affirmative defense of duress as Congress “may have contemplated” it in an offense-specific context. Oakland Cannabis Buyers’ Cooperative, 532 U. S., at 491, n. 3 (internal quotation marks omitted). In the context of the firearms offenses at issue—as will usually be the case, given the long-established common-law rule—we presume that Congress intended the petitioner to bear the burden of proving the defense of duress by a preponderance of the evidence. Accordingly, the judgment of the Court of Appeals is affirmed.

It is so ordered.

 Cf., e. g., United States v. Talbott, 78 F. 3d 1183, 1186 (CA7 1996) (per curiam); United States v. Riffe, 28 F. 3d 565, 568, n. 2 (CA6 1994); United States v. Simpson, 979 F. 2d 1282, 1287 (CA8 1992).

 There is no federal statute defining the elements of the duress defense. We have not specified the elements of the defense, see, e. g., United States v. Bailey, 444 U. S. 394, 409-410 (1980), and need not do so today. Instead, we presume the accuracy of the District Court’s description of these elements: (1) The defendant was under an unlawful and imminent threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; (2) the defendant had not recklessly or negligently placed herself in a situation in which it was probable that she would be forced to perform the criminal conduct; (3) the defendant had no reasonable, legal alternative to violating the law, that is, a chance both to refuse to perform the criminal act and also to avoid the threatened harm; and, *5 (4) that a direct causal relationship may be reasonably anticipated between the criminal act and the avoidance of the threatened harm. See App. 312-313; see generally United States v. Harper, 802 F. 2d 115, 118 (CA5 1986).

 Although §922(n) does not contain a mens rea requirement, the relevant sentencing provision, § 924(a)(1)(D), requires that a violation be committed willfully.

 As the Government recognized at oral argument, there may be crimes where the nature of the mens rea would require the Government to disprove the existence of duress beyond a reasonable doubt. See Tr. of Oral Arg. 26-27; see also, e. g., 1 W. LaFave, Substantive Criminal Law § 5.1, p. 333 (2d ed. 2003) (hereinafter LaFave) (explaining that some common-law crimes require that the crime be done “'maliciously’”); Black’s Law Dictionary 968 (7th ed. 1999) (defining malice as “[t]he intent, without justification or excuse, to commit a wrongful act”).

 Professor LaPave has explained the duress defense as follows:
“The rationale of the defense is not that the defendant, faced with the unnerving threat of harm unless he does an act which violates the literal language of the criminal law, somehow loses his mental capacity to commit the crime in question. Nor is it that the defendant has not engaged in a voluntary act. Rather it is that, even though he has done the act the crime requires and has the mental state which the crime requires, his conduct which violates the literal language of the criminal law is excused .. ..” 2 LaFave § 9.7(a), at 73 (footnotes omitted).

 While Congress’ findings in support of the Safe Streets Act show that Congress was concerned because “the ease with which any person can acquire firearms ... is a significant factor in the prevalence of lawlessness and violent crime in the United States,” § 901(a)(2), 82 Stat. 225, it would be unrealistic to read this concern with the proliferation of firearm-based violent crime as implicitly doing away with a defense as strongly rooted in history as the duress defense, see, e. g., 4 W. Blackstone, Commentaries on the Laws of England 30 (1769).

 We have previously made this assumption when addressing common-law affirmative defenses, see United States v. Oakland Cannabis Buyers’ Cooperative, 532 U. S. 483, 491 (2001); Bailey, 444 U. S., at 410, and the parties give us no reason to question it here.

 Indeed, when a congressional committee did consider codifying the duress defense, it would have had the courts determine the defense “according to the principles of the common law as they may be interpreted in the light of reason and experience.” S. 1437, 95th Cong., 2d Sess., §501 (1978).

 Duress, like the defense at issue in McKelvey, is an excuse that allows an exception from liability. See, e. g., 2 LaFave § 9.7, at 72 (“The rationale of the defense of duress is that the defendant ought to be excused when he ‘is the victim of a threat that a person of reasonable moral strength could not fairly be expected to resist’”).

 In D’Aquino v. United States, 192 F. 2d 338, 358, n. 11 (CA9 1951), the trial court instructed the jury that it would be warranted in acquitting the defendant on the basis that she acted under duress “ ‘[i]f you believe from the evidence that the defendant committed these acts that the Government alleges . . . under a well grounded apprehension of immediate death or serious bodily injury____This instruction did not require the Government to disprove duress beyond a reasonable doubt, and it seemingly placed the burden on the defendant to prove the existence of duress.