NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0281n.06
Filed: May 20, 2008

No. 06-4333

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

        v.

NOEL COLON,

    Defendant-Appellant.

On Appeal from the United States District Court for the Northern District of Ohio at Cleveland

_____/

**Before:**    **GUY, SUHRHEINRICH, and GIBBONS, Circuit Judges.**

**PER CURIAM.**    Defendant Noel Colon was convicted by a jury of one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and was sentenced to a 96-month term of imprisonment. Appealing only his conviction, defendant argues first that the district court abused its discretion by disclosing the nature of his prior felony convictions contrary to *Old Chief v. United States*, 519 U.S. 172 (1997). Second, defendant maintains that the district court committed reversible error under Fed. R. Evid. 404(b) in allowing the admission of evidence concerning (1) the defendant's violent conduct and character, and (2) defendant's incestuous relationship with his adult niece whose telephone call to police resulted in the discovery of the firearm in question. After review of

the record and the arguments presented on appeal, we affirm defendant's conviction.

**I.**

At 4:30 a.m. on June 5, 2005, police officers responded to a report of a man beating his niece in an apartment. When the officers knocked and announced themselves, the door quickly opened and defendant's 35-year-old niece Maria Morales burst through the door with defendant Colon holding her in a headlock from behind. When defendant did not let go, Officer Joseph Gulas separated them, forced defendant to the ground, and handcuffed him. Morales announced that defendant had a gun, which was recovered from the front pouch of defendant's sweatshirt.[1] The weapon, a snub-nosed .38 caliber revolver, was fully loaded and did not bear a serial number. Defendant was arrested.

At trial, defendant did not dispute that he was in possession of the firearm, did not rebut the government's evidence that the firearm traveled in interstate commerce, and ultimately stipulated that he had a prior felony conviction. Asserting a duress or necessity defense, defendant maintained that he had wrestled the firearm away from Morales when she attacked him just before the police arrived. He contended that Morales had "set him up" out of jealousy over his relationship with girlfriend Sarah Hughes. Officer Gulas testified that the defendant did not accuse Morales of attacking him at the time of his arrest, but first claimed that he took the firearm from her in a statement made to police the next day. Defendant did not testify at trial.

Morales, in contrast, testified that she called the police out of fear for her life after the

---

[1]Morales initially stated that the revolver was found on the ground but admitted at trial that she did not know that because the officers had sent her inside the apartment.

defendant threatened and assaulted her in the early hours of June 5, 2005. Morales explained that defendant returned at 3:00 a.m., and he blamed her for Hughes's apparent decision to leave him that night. Morales answered back that it was actually his fault for having kicked Hughes in the stomach and face the day before. Defendant told Morales that he would get back at her if Hughes did not return within the hour, and Morales believed that to mean he would physically hurt her. After more time passed, defendant hit Morales in the face and Morales struck him back. They continued to physically struggle, until Morales asked defendant to go out to the gas station to get her something to smoke. Once the defendant was gone, Morales went out to use a pay telephone to call the police. She returned to the apartment before the defendant and waited for the police to arrive. Morales did not accuse defendant of threatening her with the firearm, but she testified at trial that she saw him with the firearm before he went out on June 4. Morales also denied owning or possessing a firearm.

In an effort to impeach Morales, defense counsel asked about a report she made in 1997 accusing her ex-husband of threatening her with a gun. She denied that the report was false. Morales admitted that the defendant called her several times after his arrest asking her to tell the police that the firearm was hers. She said she asked if he thought she had "stupid" written on her forehead. Defense counsel then played a recorded telephone call that the defendant made from the jail to an unidentified woman. Morales insisted that she was not the woman on the recording, but Hughes identified the woman as Morales. Defense counsel used the recording in an effort to impeach Morales and bolster defendant's claim that she had

"set him up" out of jealousy.

During the call, defendant asked the woman to "tell the truth" and to "get [him] out of this mess." He asked her to tell the police that she found the gun and kept it for protection because she was disabled. When defendant accused the woman of doing "what [she] did" because she was still thinking about Hughes, the woman responded: "I dislike you for that and her, too. You shouldn't have brought her into the picture." Defendant said she got him into the mess, and he accused her of doing it because she was "mad" and "jealous." The woman answered: "You used to hit me. I'm telling you the truth. Don't hit me." Defendant answered: "I didn't hit you. You hit me because I said I love her. You got mad at me 'cause I fell in love with her. You got mad at me, you punched me in my mouth, scratched me in my neck." She replied that he should not have hit her back. When the defendant accused her of lying and setting him up, the woman answered: "They say payback is a bitch." She also said, "I told you I was going to get back at you for playing me dirty." At one point, again accusing her of being jealous, defendant stated: "Look, you fell in love with me and that's wrong."

On redirect, Morales was asked if she had called the police about the defendant before. Over defense counsel's objection and after limiting instructions, Morales testified that she had called the police on Christmas, after the defendant beat her over several days leaving bruises on her neck, chest, and face. Morales provided details of the arrest, many of which were contradicted by Officer Gulas who had responded to the call on Christmas Day 2003. Morales said she rode with the officers and was present when the defendant was

arrested coming out of the apartment. Gulas testified, however, that Morales did not ride with them, that the defendant fled and was arrested only after a 20-minute chase, and that Morales was gone when they returned to the apartment.

Defendant was living in an apartment with Morales, ostensibly because she had seizures and a knee problem and needed help. Defendant took Hughes in to live with them in April 2004. That lasted only for a few months, and then defendant moved Hughes to a separate apartment upstairs. Hughes testified that before long, defendant had started to hit her and would not let her go out or see her family without him.

Hughes confirmed that she argued with defendant on June 4, 2005, because she wanted to go to her brother's graduation. Morales sided with Hughes, but defendant would not let her go and insisted that she had to help with a craps game. When Hughes persisted, defendant spit in her face, called her names, and hit and kicked her. Hughes took defendant to the craps game, but did not return to the apartment as he had directed. She went to her mother's house without telling the defendant. Hughes explained that she was afraid of the defendant after he assaulted her on her birthday a few weeks earlier, on May 15, 2005, when she said she wanted to leave him. Defendant threatened to kill her if she did, and reminded her that he knew where to find her family. Hughes said she was shocked the first time he hit her, and that he was remorseful and promised not to do it again. But, he hit her again anyway. Hughes also testified that she saw him hit Morales "once in a blue moon." Hughes lived with the defendant again after he was released from jail, but she was not still seeing him at the time of trial.

Hughes described Morales as jealous and vindictive, stated that Morales had repeatedly threatened to kill her and the defendant, and reported that Morales once talked about going out to get a gun. Hughes conceded, however, that she never saw Morales with a firearm and never saw a firearm in the apartment. Hughes also testified that between February and June 2005, the defendant told her that he was thinking about buying a handgun that someone had offered to him. Hughes, who did not like guns, told him she thought that it was a "bad idea" because he was not supposed to have a firearm.

Hughes added that she thought Morales was unstable. Then, in response to a question asked on redirect, Hughes stated that she sometimes thought the defendant was unstable as well. Finally, Hughes related, over objection, that the defendant had once told her during an argument that he had been having a sexual relationship with Morales "since day one."

At the conclusion of trial, the district court instructed the jury both on the elements of felon in possession and the duress or necessity defense.[2] The jury found defendant guilty, the district court sentenced defendant to a 96-month term of imprisonment, and defendant filed this timely appeal.

## I.

### A.    *Old Chief*

---

[2]To establish the defense, defendant must come forward with evidence showing that he (1) reasonably believed there was an imminent threat of death or serious bodily injury, (2) did not recklessly or negligently place himself in the situation that would force him to choose criminal conduct, (3) did not have a reasonable legal alternative to violating the law, (4) reasonably believed the conduct would avoid the threatened harm, and (5) did not maintain the illegal conduct any longer than necessary. *United States v. Ridner*, 512 F.3d 846, 850 (6th Cir. 2008); *United States v. Singleton*, 902 F.2d 471, 472-73 (6th Cir. 1990).

The Supreme Court held in *Old Chief* that a district court abuses its discretion by rejecting a defendant's offer to stipulate to a prior judgment and admitting the full record of the conviction "when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction [under § 922(g)(1)]." *Old Chief v. United States*, 519 U.S. 172, 174 (1997). Defendant seeks to overturn his conviction on the grounds that the district court disclosed the defendant's prior convictions to the prospective jurors by reading an unredacted indictment to them during *voir dire*. The indictment specifically alleged that the defendant possessed the .38 caliber revolver "having been previously convicted of crimes punishable by imprisonment for a term exceeding one year, those [being] Felonious Assault and Aggravated Robbery."

Although the government argues that *Old Chief* does not apply because a stipulation was not *executed* until well after trial had commenced, *Old Chief* actually speaks in terms of a defendant's *offer* to stipulate to having a prior felony conviction. 519 U.S. at 186. The government's reliance on *United States v. McFerren*, No. 96-5458, 1998 WL 180514 (6th Cir. Apr. 8, 1998) (unpublished), is misplaced. It is true that the court in *McFerren* found no error in the district court's reading of the indictment prior to the defendant's stipulation. There was no indication, however, that the district court had been advised of an offer to stipulate prior to trial. Indeed, we also held in *McFerren* that it was an abuse of discretion for the district court to re-read the indictment as part of the jury charge after the defendant had agreed to the stipulation. *Id*. at *3.

In this case, there is no dispute that the defendant made an affirmative offer to stipulate on the record at the conclusion of the suppression hearing held the week before trial. This case differs from *Old Chief* since the district court did not reject the defendant's offer to stipulate. *See Myers v. United States*, 198 F.3d 615, 618-19 (6th Cir. 1999). Instead, the district court appears to have mistakenly included the defendant's prior convictions in reading the indictment prior to *voir dire*. Nonetheless, this court has found error in a similar situation in which the prior convictions were accidentally revealed in reading the indictment during *voir dire*. *United States v. Casey*, No. 99-1585, 2000 WL 1721055, at *4 (6th Cir. Nov. 6, 2000) (unpublished). We concluded that "the effect of the district court's misstep was essentially the same." *Id*.

Error under *Old Chief* is subject to harmless error analysis. *United States v. Daniel*, 134 F.3d 1259, 1262-63 (6th Cir. 1998). This includes, specifically, a district court's mistaken disclosure of a defendant's prior conviction through the reading of the indictment despite the defendant's offer to stipulate to having a prior felony conviction. *See United States v. Clay*, 346 F.3d 173, 177 (6th Cir. 2003). An error that is not of constitutional dimension is harmless "'unless it is more probable than not that the error materially affected the verdict.'" *Daniel*, 134 F.3d at 1262 (citation omitted). The error in *McFerren* and *Casey* was found to be harmless.

Here, as in *Casey*, the district court immediately instructed the jury that the indictment was merely the written statement of the charges and that nothing in the indictment— including the prior offenses—was evidence. Juries are presumed to understand and follow

such directions. *United States v. Forrest*, 17 F.3d 916, 920-21 (6th Cir. 1994). Also, there was no further mention of the name or nature of the prior convictions at trial, in the arguments of counsel, in the stipulation that was ultimately executed, or in the jury instructions at the close of the proofs. The final instructions advised the jurors that the indictment was not evidence of guilt, and that the prior-conviction element of the offense was satisfied by the stipulation agreeing that the defendant had a prior felony conviction. We conclude that the district court's error in this regard was harmless.[3]

## B.       Admission of "Other Acts" Evidence

Defendant maintains that it was error to allow evidence (1) of the defendant's violent conduct and character, (2) that the defendant had an incestuous relationship with Morales, and (3) that the defendant was "unstable." We review the district court's decisions to admit or exclude evidence for abuse of discretion. *United States v. Cline*, 362 F.3d 343, 348 (6th Cir. 2004). Central to this issue is Rule 404(b), which provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

---

[3]In an attempt to suggest unfair prejudice, defendant points to the fact that one potential juror expressed concern about being able to serve due to the defendant's prior convictions. A full reading of the exchange reflects, however, that the juror's concern was with the fact that the defendant was a repeat offender and not the nature of the prior offenses. That is, the question posed in *voir dire* was whether the fact that the defendant was charged with a crime involving a firearm would cause any juror to be predisposed toward the defense or the government. One prospective juror volunteered that it was difficult because she was related to a police chief and because "this is the second time for the shooting and that kind of thing." The district court immediately clarified that the charge here did not involve a shooting, but the possession of a firearm by someone whom it was agreed had a prior felony record. Not only was this individual excused, but the concern voiced did not implicate the prejudice that *Old Chief* is aimed at avoiding.

We have adopted a three-part inquiry to determine the admissibility of such evidence under Rule 404(b) and 403, which asks that the district court decide (1) whether there is sufficient evidence that the "other acts" occurred; (2) whether the evidence is probative of a material issue other than character; and (3) whether the probative value of the evidence is outweighed by its prejudicial effect. *United States v. Merriweather*, 78 F.3d 1070, 1074 (6th Cir. 1996). Consistent with the abuse of discretion standard, we review the district court's findings under the first part for clear error, the legal determination under the second part *de novo*, and the weighing under the third part for abuse of discretion. *United States v. Ganier*, 468 F.3d 920, 925 (6th Cir. 2006). An exception to the strictures of Rule 404(b) has been recognized for *res gestae* or "background" evidence. *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). We turn to the specific arguments and evidence at issue.

### 1.    Assaults on Hughes

The district court allowed Morales and then Hughes to testify, over defense counsel's objection, that the defendant assaulted and kicked Hughes on June 4, 2005. Hughes also testified that the defendant had assaulted her and threatened her and her family when she said she wanted to leave him on May 15, 2005. The government argued, and the district court found, that evidence of these assaults was part of the *res gestae*. To come within this exception to Rule 404(b), the evidence must "consis[t] of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *Hardy*, 228 F.3d at 748. The court explained in *Hardy* that:

>Proper background evidence has a causal, temporal, or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*Id*.

Had defendant not asserted a necessity defense, putting at issue the events that preceded his possession of the firearm would not have been admissible as background evidence. The testimony regarding the assaults on June 4 and May 15 was connected to the offense and was integral to Morales's testimony. It explained why, according to Morales, defendant was so upset when he returned to the apartment. It also explained why Hughes did not tell him that she was leaving him, and why Morales claimed to have been afraid for her life when she called the police. Evidence concerning these assaults was properly admitted as background evidence because of its connection to the charged offense and because it completes the story of the charged offense.

### 2. Assault on Morales

The government relied on Rule 404(b) to admit evidence that Morales called the police on Christmas Day 2003 reporting that the defendant had assaulted her over two or three days. Morales testified that she reported it to the police, and that the defendant was arrested coming out of the apartment. Although Morales said this happened on Christmas 2001, Officer Gulas testified that he responded to the call on Christmas 2003. Defense counsel objected, but the district court allowed the testimony and gave a limiting instruction.

Arguing essentially that Morales was not worthy of belief, defendant argues that there

was insufficient evidence that the assault even occurred. The government is not required to demonstrate by a preponderance of the evidence that the other acts occurred. *Huddleston v. United States*, 485 U.S. 681, 685 (1988). Under Rule 404(b), the evidence is relevant "if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Id*. at 689. It was not clear error to find there was sufficient evidence of such "other acts." *Ganier*, 468 F.3d at 925.

The district court found the evidence was probative of both the defendant's intent and Morales's motive and intent, and commented that the "same type of intent and credibility issues are certainly present in this case that were probably present back at that time." The government's purpose in offering 404(b) evidence must be "to prove a fact that the defendant has placed, or conceivably will place, in issue, or a fact that the statutory elements obligate the government to prove." *Merriweather*, 78 F.3d at 1076. As defendant points out, necessity or duress is a justification defense to the felon-in-possession charge that does not negate the intent necessary to establish the offense. *Dixon v. United States*, 126 S. Ct. 2437, 2441-42 (2006).

Nonetheless, defendant squarely placed at issue the question of whether he or Morales was the aggressor on June 5. The evidence was relevant on this issue and to rebut defendant's claim that he reasonably believed that Morales posed an imminent threat of death or serious bodily injury. The evidence was also relevant to Morales's motive and intent, and, as the district court emphasized, the evidence could "cut either way" because Morales was either consistently telling the truth or consistently lying. In fact, defense counsel made much

of the fact that Officer Gulas contradicted Morales's testimony regarding the arrest in several respects. It was not error to conclude that evidence concerning the Christmas incident was probative of a material issue other than character, nor an abuse of discretion to find that the probative value was not outweighed by its unfairly prejudicial effect.

### 3.    Sexual Relationship with Morales

Hughes testified that the defendant told her during an argument that he had a sexual relationship with Morales "since day one." Defense counsel objected and moved for a mistrial on the grounds that injecting incest into the trial was unfairly prejudicial. The government argued that this newly discovered evidence was admissible because the defendant had "opened the door" to it by portraying Morales as having a one-sided love interest in the defendant. We have recognized that when a party "opens the door" on an issue by eliciting prejudicial or inadmissible testimony, the district court may in its discretion allow evidence on the same issue "to rebut any false impression that might have resulted from the earlier admission." *United States v. Segines*, 17 F.3d 847, 856 (6th Cir. 1994). The district court allowed the evidence, explaining that

> the relationship between [Morales] and Noel Colon has been squarely placed in issue in this case in front of this jury. They have heard a lot of testimony regarding Maria's relationship with the defendant, and this just further amplifies it. Does it add an additional level? Yes. But it doesn't go to the point where I believe a mistrial is warranted. It gives context to the intertwining of the relationship, that is, the defendant, Maria and now Sara Hughes, to give a full context for this jury to consider when they are making decisions about credibility.

It was the defendant who put his relationship with Morales at issue by arguing that she "set him up" because she was jealous of his relationship with Hughes. The testimony to that point

left some ambiguity about the basis for the jealousy—reflected in the defendant's statement on the recorded call that Morales fell in love with him and that "it was wrong." Even so, the testimony, including much of the recorded call, also implied that there was more than a familial relationship between defendant and his adult niece. Defendant may have preferred leaving the ambiguity, but it was not error to allow Hughes to complete the picture of the relationship between defendant and Morales and the basis for Morales to be jealous of Hughes.

### 3. "Unstable"

After Hughes described Morales as "unstable," the government asked on redirect about the defendant, and Hughes answered that she sometimes thought that he was unstable as well. Defendant's objection was overruled. The government argues that "when a party questions a witness on a subject, even though that subject may not be strictly relevant to the case, the party cannot complain on appeal if the opposing part subsequently introduces evidence on the same subject." *United States v. Touloumis*, 771 F.2d 235, 241 (7th Cir. 1985). The evidence, however, was not "on the same subject." Nonetheless, error in the admission of such evidence is harmless unless it is more probable than not that the error materially affected the verdict. *Daniel*, 134 F.3d at 1262. Here, we cannot conclude that evidence that both Morales and the defendant were unstable materially affected the verdict.

**AFFIRMED.**

**Suhrheinrich, J., concurring:** I cannot agree that the evidence relating to the assault on Christmas Day 2003 was properly admitted under Rule 404(b). This incident, which occurred one and a half years prior to the crime at issue, is only relevant to establish Colon's allegedly violent character to prove action in conformity therewith at the time of the incident, *i.e.,* that Colon must have been the aggressor during the struggle with Morales. Colon's conduct in the Christmas Day assault was not probative of his intent or motive to possess a firearm during the struggle with Morales on June 5, 2005. Indeed, the majority does not explain *how* the December 2003 incident established intent or motive, but simply repeats the language of the Rule. In reality, the December 2003 incident simply shows that Colon has a violent character and that he frequently beat Morales and Hughes.

Notwithstanding, I concur because the error was harmless. *See United States v. Thomas*, 49 F.3d 253, 259 (6th Cir. 1995). The record supports Colon's conviction under 18 U.S.C. § 922(g)(1) given Colon's stipulation to his felon status, Colon's own statement to Officer Cook that he had a gun that he had wrestled away from Morales, the testimony of the responding officers Gulas and Cortes that Morales had a gun on his person, Officer Gulas's testimony that Morales appeared to be trying to escape from Colon and that Colon gave no indication at the time that he was acting in self defense, and Agent Hopkins' undisputed testimony and ammunition were manufactured outside Ohio. Thus, any error in admitting evidence of Colon's prior acts of violence was harmless.