**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 24-1420**

---

MARY FRANCES HERKERT,

        Plaintiff – Appellant,

   v.

FRANK BISIGNANO, Commissioner, Social Security Administration,

        Defendant – Appellee.

---

Appeal from the United States District Court for the District of Maryland, at Baltimore. Lydia Kay Griggsby, District Judge. (1:22-cv-03139-LKG)

---

Argued: March 18, 2025                       Decided: August 14, 2025

---

Before GREGORY and HARRIS, Circuit Judges, and KEENAN, Senior Circuit Judge.

---

Vacated and remanded by published opinion. Judge Harris wrote the opinion, in which Judge Gregory and Judge Keenan joined.

---

**ARGUED:** Kristen Jean Farr, THE LAW FIRM OF KRISTEN J. FARR, Washington, D.C., for Appellant. Matthew T. Shea, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Erek L. Barron, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

PAMELA HARRIS, Circuit Judge:

The plaintiff in this employment discrimination case, Mary Herkert, is a Social Security Administration employee with a disability. According to Herkert, when she requested scheduled telework as an accommodation for her medical needs, her request was denied, and she informed her supervisors of her intent to pursue equal employment opportunity remedies. Shortly after that, Herkert says, she was reassigned to a less desirable position at the agency, where she was able to telework as requested.

Herkert sued in federal district court, claiming that her reassignment was discriminatory and retaliatory, and that it failed to reasonably accommodate her disability. The district court granted summary judgment to the defendant, the Commissioner of the Social Security Administration. The court reasoned, in part, that Herkert could not show the adverse employment action required for her discrimination and retaliation claims because her reassignment did not work a "significant" change in her employment status.

Since the district court ruling, the Supreme Court has clarified that a plaintiff like Herkert, challenging a job transfer as discriminatory, need not show a "significant" change in working conditions to establish an adverse employment action. *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). In light of *Muldrow*, we cannot say, as a matter of law, that Herkert's reassignment was insufficiently "adverse" to support her claims. And although the district court also relied on the purportedly "voluntary" nature of Herkert's reassignment to reject her claims, we think genuine factual disputes preclude summary judgment on that issue, too. Accordingly, and for the reasons detailed below, we vacate the judgment of the district court and remand for further proceedings.

2

## I.

### A.

Plaintiff Mary Herkert suffers from multiple physical disabilities, including severe renal impairment, pulmonary impairment, and spondylosis. Between December 2015 and October 2017, she was employed as a "Branch Chief" by the Social Security Administration's ("SSA") Office of Buildings Management ("OBM"), a GS-13 position on the federal government pay scale. In this role, Herkert served in a supervisory capacity and was responsible for the oversight of building management services for the SSA. Pursuant to SSA policy, building managers were generally allowed to telework one day per week. Herkert requested, and consistently received, additional telework days as an accommodation for her medical conditions.

Beyond these basic points of agreement, the parties' factual accounts diverge in important respects. The story picks up in the spring of 2017. According to the Commissioner, Herkert's job performance began to falter at that point. Herkert tells it differently, pointing to the "fully successful" rating she received in her April 2017 performance review and averring that she was never informed of any performance issues during that period.

The first pivotal event occurred on July 17, 2017, when Herkert met with her supervisor, Sandra Eddington. Herkert requested a scheduled telework arrangement to replace the ad hoc accommodations she had been granted in the past, and offered to submit a formal accommodation request. According to Herkert, Eddington advised that a formal

request was not necessary and that additional telework would continue to be approved on an as-needed basis. But, Herkert says, that is not what happened. Instead, after the July 17 meeting she began to face increased scrutiny and hostility from Eddington, and the denial of previously approved telework without explanation.

The following month, in August 2017, Herkert met with two more senior SSA supervisors. According to Herkert, she sought the meeting to pursue her request for scheduled telework of two days per week to accommodate her medical issues, and to discuss Eddington's post-July 17 denials of telework and "harassment." J.A. 248. One of the supervisors, Herkert says, confirmed the denial of her request for scheduled telework as against SSA policy. Herkert expressed her objections and her intent to "escalate" her accommodation request through "EEO" – equal employment opportunity – channels. *Id.* Herkert then filed a formal accommodation request with the SSA.

In September, Eddington discussed with Herkert concerns about Herkert's delay in completing a work project – the first time, according to Herkert, any of her supervisors had raised an issue with her job performance. A few days later, Herkert sought equal employment opportunity counseling, citing harassment, failure to approve a reasonable accommodation, and hostile work environment. And a few days after that, an SSA Agency Medical Officer determined that Herkert had a disabling condition under the terms of the Rehabilitation Act and that her requested scheduled telework accommodation would be "reasonable and effective." J.A. 249.

Things came to a head on September 27, 2017, when Herkert was called into a meeting with Eddington and the two more senior supervisors who had been present at her

4

August meeting. According to Herkert, she was told that because of performance issues, she was being reassigned to a management analyst position within OBM. In that new position, Herkert says, she would no longer have supervisory responsibilities; instead, she would fill a position she was then supervising. In Herkert's view, this reassignment was a "demotion," mostly because it stripped her of her supervisory authority and duties but also because it was less prestigious, less interesting, and provided less room for advancement. J.A. 13. In the Commissioner's view, however, the reassignment was not a demotion but instead a "lateral move" that would keep Herkert at the same GS-13 pay grade with the same salary and benefits. J.A. 327.

The following Monday, on October 2, 2017, Herkert met with Jim Julian, a Deputy Associate Commissioner at the SSA, to discuss her reassignment. As a substitute for her reassignment to the OBM management analyst position, Herkert says, Julian offered her a different GS-13 management analyst position: still without supervisory authority, but in a different SSA office that would "at least remove [her] from the hostile, harassing and retaliatory work environment" she was then experiencing at OBM. J.A. 249. But according to Herkert, it was one reassignment or the other; it "was made clear" that she could not keep her supervisory job as a Branch Chief. *Id.* "[R]eluctantly," Herkert says, she accepted the management analyst position proposed by Julian as the "least worst" alternative. *Id.* at 249–50. As the Commissioner emphasizes, Herkert also expressed her appreciation to Julian, writing that she was "very excited having the opportunity" he had offered and "most grateful to [him] for making it happen." J.A. 196.

5

Herkert was officially reassigned effective October 15, 2017. There is no dispute that shortly after Herkert started in her new role, Julian sent her a letter approving her request for "telework up to 2 days [per] week" (and an additional episodic day as necessary) as a "reasonable accommodation" made possible by her reassignment to the management analyst position. J.A. 240.

**B.**

After administratively exhausting her claims,[1] Herkert filed a complaint in the United States District Court for the District of Maryland against the then-Commissioner of the SSA.[2] As relevant on appeal, Herkert claims that the SSA discriminated against her because of her disability, retaliated against her for pursuing equal employment opportunity remedies, and failed to provide a reasonable accommodation by reassigning her from her supervisory building manager role to a non-supervisory management analyst position, all in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* The Commissioner moved to dismiss the complaint or, in the alternative, for summary judgment.

The district court granted summary judgment to the Commissioner. *See Herkert v. Kijakazi*, No. 1:22-cv-03139-LKG, 2024 WL 1050831, at *1 (D. Md. Mar. 11, 2024). The

---

[1] Herkert filed a formal complaint with the Equal Employment Opportunity Commission on December 17, 2017. The administrative law judge issued a Final Agency Decision finding no discrimination or retaliation, and the Office of Federal Operations affirmed.

[2] The defendant has since been automatically substituted several times as different public officers have served as Commissioner or Acting Commissioner of the SSA. *See* Fed. R. Civ. P. 25(d); Fed. R. App. P. 43(c)(2).

6

court began with Herkert's discrimination and retaliation claims, which it analyzed in tandem. To succeed on each of those claims, the district court explained, Herkert would have to show that she suffered some "adverse" employment action. *Id.* at *5. And for two independent reasons, the court concluded, Herkert could not make that showing.

First, the court held, Herkert's reassignment did not constitute a sufficiently "significant" change in her employment status to qualify as an "adverse employment action" for purposes of a discrimination claim. *Id.* at *7–8. This "significant" standard, the court reasoned, had been established by Fourth Circuit precedent, and when the employment action in question was a reassignment, it required "some significant detrimental effect" on the employee's status, like a "decrease in salary, benefits, or rank." *Id.* at *6 (first quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004); then quoting *Edmonson v. Potter*, 118 F. App'x 726, 729 (4th Cir. 2004)). Here, it was undisputed that Herkert's reassignment to a non-supervisory position "did not involve any change to [her] pay grade or salary" and offered her the same benefits. *See id.* at *8. And although Herkert alleged that the new position offered less "prestige, interest, and advancement," even taken as true, those facts were insufficient as a matter of law to show that her reassignment was "substantially detrimental." *Id.*

With respect to Herkert's retaliation claim, the district court noted that the standard for an adverse action is different. In that context, the court explained, Herkert was required to show a "materially adverse" action, or one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination" or otherwise engaging in protected conduct. *Id.* at *7 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S.

7

53, 68 (2006)).   The court did not, however, separately consider whether Herkert's reassignment met this "materially adverse" standard.  *See id.* at *7–8.

Instead, the court moved on to its second reason for holding that Herkert could not show the requisite adverse employment action:  If an employee "voluntarily requests a transfer, and the employer agrees to it, there is no actionable adverse action."  *Id.* at *7 (quoting *Laird v. Fairfax Cnty.*, 978 F.3d 887, 894 (4th Cir. 2020)).  In the court's view, it was "undisputed that [Herkert] voluntarily accepted a reassignment to the position of management analyst" proposed during her meeting with Julian, as reflected in her email expressing her gratitude to Julian "for making it happen."  *Id.* at *8.  It followed, the court held, that Herkert was precluded from showing the requisite adverse employment action for both her discrimination and retaliation claims.  *Id.*

Having found as a matter of law that Herkert's reassignment was neither significantly detrimental nor involuntary, the court had little trouble concluding that the reassignment also constituted a "reasonable accommodation."  *Id.* at *9.  To succeed on a reasonable accommodation claim, the court explained, Herkert was required to establish, *inter alia*, that her employer had failed to make a reasonable accommodation for her disability.  *Id.*  But here, the court explained, the undisputed facts showed that in her new and voluntarily accepted position, Herkert was granted her requested telework accommodation and permitted to telework up to two days per week.  Because she had been provided with the additional telework days she sought by way of this "effective accommodation[]," the court held, Herkert could not succeed on a reasonable accommodation claim.  *Id.*

8

Herkert timely appealed.

## II.

We review the district court's ruling on summary judgment de novo, applying the same legal standards as the district court and viewing the evidence in the light most favorable to Herkert, the nonmoving party. *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018). Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If, after reviewing the record as a whole, we find that a reasonable jury could return a verdict for Herkert, "then a genuine factual dispute exists and summary judgment is improper." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996).

The Supreme Court recently – and only after the district court's decision – rejected the position that a change in employment status must work a "significant" harm to support a discrimination claim. *See Muldrow*, 601 U.S. at 354–56. Under the correct standard, requiring only "some 'disadvantageous' change in an employment term or condition," *id.* at 354, we cannot say, as a matter of law, that Herkert's reassignment does not qualify. We also conclude that there are genuine factual disputes as to the "voluntary" nature of Herkert's reassignment. We therefore vacate the district court's grant of summary judgment to the Commissioner on Herkert's discrimination and retaliation claims. And because the district court's reasonable accommodation analysis presupposed that Herkert's reassignment was both voluntary and of no cognizable harm to Herkert, we vacate the grant

9

of summary judgment on that claim, as well, and remand so that the district court may revisit the issue.

**A.**

We begin with Herkert's discrimination and retaliation claims which, like the district court, we address together. Herkert brings her claims pursuant to the Rehabilitation Act, which prohibits federal agencies from discriminating against their employees on the basis of disability. *See* 29 U.S.C. § 794(a). In determining whether the Rehabilitation Act has been violated, courts apply the same standards as under the Americans with Disabilities Act. *See id.* § 794(d); *see also Doe v. U. of Maryland Med. System Corp.*, 50 F.3d 1261, 1265 n.9 (4th Cir. 1995) (explaining that where the Rehabilitation Act and ADA employ language that "is substantially the same, we apply the same analysis to both").[3] And because the ADA, in turn, "echoes and expressly refers to Title VII, and because the two statutes have the same purpose – the prohibition of illegal discrimination in employment – courts have routinely used Title VII precedent in ADA cases." *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001).

Under this precedent, as the district court explained and the parties agree, Herkert must show, as part of her discrimination and retaliation claims, that she suffered an adverse employment action. *See Herkert*, 2024 WL 1050831, at *7 (first citing *Hannah P. v. Coats*, 916 F.3d 327, 342 (4th Cir. 2019) (discrimination); then citing *Foster v. Univ. of Maryland-*

---

[3] The Americans with Disabilities Act's employment discrimination provisions also forbid retaliation against employees who have engaged in protected activity. *See* 42 U.S.C. § 12203(a); *see* 29 U.S.C. § 794(d) (incorporating ADA's anti-retaliation provision).

10

*Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (retaliation)).  Whether she can make that showing is the question on appeal.

1.

In evaluating whether Herkert's reassignment was sufficiently "adverse" for discrimination purposes, the district court applied what was then the governing standard in our circuit and held that only a reassignment with a "significant detrimental effect" could qualify.  *Id.* at *6; *see James*, 368 F.3d at 376.  And under that standard, the court concluded, Herkert's reassignment to a management analyst position – with the same pay grade and salary as Herkert's prior Branch Chief position, but with no supervisory authority and an alleged loss of "prestige, interest, and advancement" – was not "significant" enough to constitute an adverse employment action.  *Herkert*, 2024 WL 1050831, at *8.

A month later, the Supreme Court abrogated our decision in *James*, *see Muldrow*, 601 U.S. at 353 & n.1 (listing *James* as among the decisions incorrectly requiring a "heightened threshold of harm" to make out a discrimination claim), and held that a plaintiff alleging Title VII discrimination need not show that harm incurred from a reassignment was "significant."  A plaintiff must, of course, "show *some* harm from a forced transfer to prevail," but "she need not show that the injury satisfies a significance test."  *Id.* at 350 (emphasis added).  Instead, it is enough that the plaintiff has suffered "some disadvantageous change in an employment term or condition."  *Id.* at 354 (internal quotation marks and citation omitted).

The Commissioner does not dispute that *Muldrow*, a Title VII case, governs here, and we agree that *Muldrow* is applicable to Herkert's Rehabilitation Act discrimination

11

claim. As noted above, courts routinely rely on Title VII precedent in ADA cases, *Fox*, 247 F.3d at 176, and the Rehabilitation Act expressly incorporates ADA standards, *see* 29 U.S.C. § 794(d). And though there are some circumstances in which differences in statutory text may "dictate different interpretations," *see Baird ex rel. Baird v. Rose*, 192 F.3d 462, 469 (4th Cir. 1999), there are no such differences here: The relevant text in Title VII prohibits "discriminat[ing] against" an individual "with respect to his compensation, terms, conditions, or privileges of employment," *see Muldrow*, 601 U.S. at 354; 42 U.S.C. § 2000e-2(a)(1), and the Rehabilitation Act, by way of the ADA, prohibits "discriminat[ing] against" a qualified individual "in regard to . . . employee compensation . . . and other terms, conditions, and privileges of employment," 42 U.S.C. § 12112.

What the parties do dispute is whether Herkert can satisfy the *Muldrow* standard by showing "some disadvantageous change" – which need not be "significant," "serious," or "substantial," *see Muldrow*, 601 U.S. at 355 – in the terms and conditions of her employment. The government argues that she cannot, emphasizing that Herkert's reassignment from Branch Chief to management analyst entailed no diminution in pay grade, salary, or benefits. Herkert, on the other hand, argues that her reassignment was tantamount to a demotion and distinctly "disadvantageous," primarily because it took away her supervisory authority and duties.[4]

---

[4] That Herkert was transferred from a supervisory position to a non-supervisory position is undisputed. Herkert also alleges that her new position offered less "prestige, interest, and advancement" – an allegation that the Commissioner does dispute, pointing especially to Herkert's promotion from the management analyst position in 2020, to a (Continued)

*Muldrow* offers some support for Herkert's position, recognizing that a loss of supervisory authority may be highly relevant to the "simple injury" standard it is announcing. *See Muldrow*, 601 U.S. at 355–56 & n.2 (noting, as one example of a claim that had "failed under a significance standard [but] should now succeed," the case of a school principal who was "forced into a non-school-based administrative role supervising fewer employees"). But we do not read *Muldrow* as holding that a loss of supervisory responsibility will *always* be "disadvantageous," and we can imagine circumstances in which, say, the removal of burdensome supervisory duties could be a welcome development that improves the terms and conditions of employment. Accordingly, we decline to hold, as Herkert urges, that any loss of supervisory authority suffices as a matter of law to show an actionable "disadvantageous change" in employment status. Instead, we think this is a context-specific inquiry, and that it is for a jury to assess Herkert's allegation that in her case, reassignment to a non-supervisory role was an adverse and "disadvantageous" change that left her "worse off," even if not "significantly so." *Id.* at 359.

2.

The effect of *Muldrow* on Herkert's retaliation claim requires a bit more explanation. As the district court recognized, courts have employed a distinct standard for identifying cognizable adverse actions in the retaliation context. *Herkert*, 2024 WL

---

higher salary, supervisory position. We leave an assessment of these allegations and their relevance under the *Muldrow* standard to the district court on remand.

1050831, at *7. Title VII's anti-discrimination provision – like the ADA's – "requires that the injury asserted concern the terms and conditions of [] employment." *Muldrow*, 601 U.S. at 358; *see* 42 U.S.C. § 2000e-2(a)(1) (Title VII); 42 U.S.C. § 12112 (ADA). The anti-retaliation provision, by contrast, is not tied to the terms and conditions of employment, and so may "include a wider variety of conduct within its scope." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 213 (4th Cir. 2022) (citing *Burlington N.*, 548 U.S. at 62–63); *see Laird*, 978 F.3d at 893. But only "materially adverse" actions will qualify – those "serious enough to 'dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Muldrow*, 601 U.S. at 358 (quoting *Burlington N.*, 548 U.S. at 68); *see Laurent-Workman*, 54 F.4th at 213 ("materially adverse" standard "separates minor harms from those that threaten to chill" protected conduct). This standard is sometimes referred to as a "significant harm" requirement, creating some linguistic overlap with the heightened threshold of harm rejected by *Muldrow*. But because the "materially adverse" standard was "adopted . . . for reasons peculiar to the retaliation context," *Muldrow*'s analysis of discrimination claims leaves it unchanged. *Muldrow*, 601 U.S. at 357.

In short, it remains the case, as the district court noted, that to prevail on her retaliation claim, Herkert was required to show that "a reasonable employee would have found [her] reassignment to be materially adverse," in that it "might have dissuaded a reasonable worker" from pursuing a discrimination complaint. *Herkert*, 2024 WL 1050831, at *7 (citation omitted). But although the district court recited this standard, it seems not to have applied it to the reassignment in question. And in light of the record

14

evidence, which we view in the light most favorable to Herkert at this stage of the proceedings, we cannot say that Herkert's reassignment from Branch Chief to management analyst could not meet the "materially adverse" standard as a matter of law. For much the same reason a jury could credit Herkert's allegations that her reassignment to a non-supervisory position was a "disadvantageous change" in her employment status, it could find that change might "dissuade a reasonable worker" from protected activity.

3.

The district court separately concluded that Herkert could not show an adverse action for either discrimination or retaliation purposes because her reassignment was "voluntary." There is "no actionable adverse action," the court reasoned, when an employee voluntarily accepts a transfer. *Id.* (quoting *Laird*, 978 F.3d at 894). And in the district court's view, it was "undisputed" that Herkert did just that, voluntarily transferring to a non-supervisory analyst role where she could telework on a scheduled basis. *Id.* at *8. We disagree. Viewing the evidence in Herkert's favor, as we must, we think a reasonable jury could conclude that Herkert's reassignment from Branch Chief to a non-supervisory position was not "voluntary" in the relevant sense.

The district court relied primarily on our decision in *Laird*, in which we considered ADA discrimination and retaliation claims by a plaintiff who, like Herkert, sought telework as a reasonable accommodation for her disability. 978 F.3d at 890. After filing a complaint with the Equal Employment Opportunity Commission, she entered into a settlement agreement in which her employer "agreed to provide, and Laird agreed to accept, a lateral transfer" to a position in which there would be more telework flexibility. *Id.* (cleaned up).

15

When Laird later sued her employer, alleging the transfer was in fact an adverse action, we rejected that claim: "If an employee voluntarily requests a transfer, and the employer agrees to it, there is no actionable adverse action." *Id.* at 894; *see id.* at 895 ("[A] transfer is not an adverse action when it is voluntarily requested and agreed upon.")

According to Herkert, that is not what happened here. As Herkert describes it, the employment action in question – her alleged "demotion" from Branch Chief to management analyst – occurred when she was called into a meeting on September 27, 2017, and informed by her supervisors that she was being reassigned to a non-supervisory analyst position. That reassignment, Herkert says, was presented as a fait accompli, in response to purported performance issues on her part. *See* J.A. 249 ("I was informed that I was removed from my position on the pretext of performance issues [and] . . . instructed to report to [a] cubicle for a new position of lower status effective immediately."). There is nothing "voluntary" about this version of events.

The Commissioner, of course, emphasizes what happened next, when a few days later, on October 2, 2017, Julian offered Herkert a substitute management analyst position in a different SSA office. And Herkert does not dispute that when offered that substitute she gratefully accepted it, because it would "at least remove [her] from the hostile, harassing and retaliatory work environment" in her current office. *Id.* But according to Herkert, that offer came only *after* she already had been "demoted" on September 27 – stripped of her Branch Chief position and reassigned as a management analyst – and it was at all times made clear to her that she could not keep her original job. *Id.* On Herkert's account, in other words, her transfer from Branch Chief to management analyst was

16

imposed on her on September 27 and, in one office or another, was involuntary on September 27 and still involuntary on October 2.

The district court's reasoning on this point is not altogether clear. To the extent the district court believed that Herkert's account of events described a "voluntary" reassignment within the meaning of *Laird*, that was mistaken as a matter of law. An employer cannot transform a demotion into a voluntary transfer by giving an employee a choice between two demotions. To the extent the district court believed the record would not allow a jury to credit Herkert's account, that, too, was mistaken. We see nothing in the record that would foreclose Herkert's allegation that she accepted one of two analyst positions only after SSA management made clear that she would be reassigned to that position no matter what. Indeed, in many important respects, Herkert's account is not disputed by the Commissioner: The Commissioner agrees, for instance, that a "decision to reassign" Herkert to a non-supervisory position was made prior to the September 27 meeting at which Herkert was informed of her transfer, and days before she was offered a substitute analyst position in another office. Whether Herkert can ultimately prove her version of events is, of course, a question for a jury, about which we express no view.

In sum, we conclude that the district court erred when it held that Herkert could not show, as a matter of law, the requisite adverse action to support her discrimination and retaliation claims – either because her reassignment was not sufficiently disadvantageous

17

or material, or because it was voluntary.  Accordingly, we vacate the grant of summary judgment to the Commissioner on these claims and remand for further proceedings.[5]

**B.**

That leaves Herkert's reasonable accommodation claim.  To establish a prima facie case on a failure-to-accommodate claim under the Rehabilitation Act, as under the ADA, a plaintiff must show that (1) she is an individual with a qualifying disability, (2) that her employer had notice of that disability, (3) that she could perform the essential functions of her job with a reasonable accommodation, and (4) that her employer refused to make a reasonable accommodation.  *Herkert*, 2024 WL 1050831, at *9; *see Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 413–14 (4th Cir. 2015).  The district court held that Herkert could not make the fourth of these showings, and granted summary judgment to the Commissioner on that basis.  *Herkert*, 2024 WL 1050831, at *9.

For the district court, this was a straightforward matter:  It was undisputed that in her new management analyst position, Herkert had been allowed scheduled telework of up to two days a week.  *Id.*  And the district court already had established, it believed, that Herkert had voluntarily agreed to reassignment to this new position – naturally enough, in

---

[5] The Commissioner argues that even if Herkert can show an adverse action, it is entitled to summary judgment on her discrimination and retaliation claims on alternative grounds.  According to the Commissioner, he can establish as a matter of law that the SSA had legitimate, non-discriminatory and non-retaliatory reasons for her reassignment, and Herkert cannot show that its reasons are pretexts for discrimination or retaliation.  *See Hannah P.*, 916 F.3d at 347 (explaining that courts analyze Rehabilitation Act discrimination and retaliation claims under the *McDonnell Douglas* burden-shifting framework).  We express no view on these arguments and leave them to the district court on remand.

the court's view, because the reassignment from Branch Chief to management analyst brought no appreciable downsides. *Id.* at \*7–8.  For the same reasons Herkert could not show her reassignment was adverse, in other words, the district court thought it clear that her reassignment was a "reasonable" accommodation of her disability.  Likewise, the SSA now argues that Herkert's reasonable accommodation claim fails for the same reason as her discrimination and retaliation claims:  because her reassignment to a management analyst position was not adverse.

But as we have explained, the district court erred in concluding, as a matter of law, that Herkert suffered no adverse employment action and that her reassignment was voluntary.  And that error affected its analysis of Herkert's reasonable accommodation claim, as well.  Because it viewed Herkert's reassignment as voluntary, for instance, the district court had no occasion to consider that "unilateral[]" reassignment of an employee to a "position they do not want" may not qualify as a reasonable accommodation.  *Wirtes v. City of Newport News*, 996 F.3d 234, 241 (4th Cir. 2021) (cleaned up) (holding that district court erred in granting summary judgment on reasonable accommodation claim "without considering the strongly disfavored status" of involuntary transfers when disabled employee can perform essential functions of current position with or without reasonable accommodation).  And because it viewed Herkert's new non-supervisory job position as equal in all relevant respects to her old position, it had no occasion to consider whether it provided Herkert a "meaningful equal employment opportunity." *Reyazuddin*, 789 F.3d at 416.

19

Because the district court's analysis of Herkert's discrimination and retaliation claims "overlaps considerably with [Herkert's] failure-to-accommodate claim," "our earlier holding . . . applies here as well." *Id.* at 418–19. Having vacated the district court's judgment that Herkert cannot show an involuntary and adverse employment action, we must also vacate its judgment on Herkert's reasonable accommodation claim.

## III.

For the reasons given above, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*